STEINER DIAMOND AND COMPANY, INC., Plaintiff-Appellant, v. THE FLASHNER MEDICAL PARTNERSHIP *et al.*, Defendants-Appellees.

First District (5th Division)   Nos. 1—90—2402, 1—90—2523 cons.

Opinion filed August 28, 1992.—Modified on denial of rehearing November 13, 1992.

Arvey, Hodes, Costello & Burman, of Chicago (John J. Enright, of counsel), for appellant.

Office of General Counsel of Flashner Medical Partnership, of Chicago (Cheryl Weissman and Joan Slezak, of counsel), for appellees.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Plaintiff Steiner Diamond appeals the trial court's dismissal of its contract-based indemnification claim on the grounds that such cause of action was a compulsory counterclaim in a related Federal proceeding. For the reasons which follow, we reverse the decision of the court below.

The immediate parties to the instant action are Steiner Diamond, a Chicago securities broker and dealer, and the Flashner Medical Partnership (FMP), an Illinois partnership engaged in the practice of medicine. Also involved in the events preceding the litigation at bar is Doctor's Officenter Corporation (DOC), an Illinois corporation owning doctors' offices staffed by physicians provided by FMP. In addition to providing the medical services at DOC's numerous physical facilities, FMP owned a controlling interest in DOC. Furthermore, the managing and senior partners in FMP were also the officers and directors of DOC.

On December 7, 1983, DOC made a public offering of its common stock by selling such stock to multiple securities dealers, or underwriters, one of these being Steiner Diamond. The underwriters formed among themselves a syndicate managed by Steiner Diamond to make a retail distribution of the stock to their own retail customers. Warranties and representations made by DOC to the underwriters were contained in a written contract, or underwriting agreement. FMP was also a signing and contracting party to the underwriting agreement and joined in DOC's undertakings, warranties, and representations to the underwriters.

The DOC stock being publicly offered was registered with the United States Securities and Exchange Commission (SEC) for public sale under a registration statement filed with the SEC by DOC and signed by some of DOC's officers and all of its directors. Part of that registration statement was a prospectus which was also the legally required disclosure document to accompany each sale to each investor.

About 10 months after the public offering, DOC experienced financial difficulties and decided to liquidate by selling its operating assets to another company. Following this transaction, the public offering investors suffered a loss of more than two-thirds of their investment, an amount considerably higher than that lost by the direct and indirect owners of DOC such as FMP. Five of these investors, all of whom were Steiner Diamond customers, initiated a Federal lawsuit based on alleged fraudulent statements or material

omissions in the prospectus generated for the public offering of DOC. (Plaintiff's twin theories of recovery were violation of the general antifraud provisions of SEC Rule 10b—5 (17 C.F.R. §240.10b—5 (1992)) and common law fraud.) The defendants who were sued in the Federal litigation were DOC, all of its officers and directors, its lawyer and his law firm, and FMP.[1] Neither Steiner Diamond nor any other underwriter was sued.

In 1988, all of the defendants in the Federal case filed third-party complaints against Steiner Diamond for implied and/or statutory contribution. These actions were premised on the theory that Steiner Diamond was an alleged co-perpetrator or joint tortfeasor of the alleged Rule 10b—5 violation and fraud (if it was determined that any fraud had in fact been committed).

Steiner Diamond moved to dismiss the Federal third-party actions on grounds which included the nonexistence in law of implied or statutory contribution claims among intentional tortfeasors. These motions were denied and Steiner Diamond was required to answer the third-party actions. Additionally, Steiner Diamond filed three counterclaims in Federal court alleging breach of the representations in the prospectus and registration statement and requesting reimbursement for expenses incurred due to its wrongful involvement in the Federal litigation. Steiner Diamond also filed a counterclaim in State court based on the indemnifying clause of the underwriting agreement. In this section of the agreement, DOC and FMP had agreed to indemnify all underwriters against any expense of defending future litigation based on charges of any untrue or misleading contents of DOC's prospectus. (This claim, unlike the ones filed in Federal court, did not contain any allegations of breach of contract or wrongful involvement and relied solely on the contractual indemnification provisions of the underwriting agreement.)

FMP at first moved to dismiss this case in the circuit court on the grounds that it was a compulsory counterclaim in the pending Federal litigation which needed to be filed in Federal court (Federal Rules of Civil Procedure 13(a)), and further that the Federal litigation constituted a prior pending case on the same cause of action which would require dismissal under Illinois Code of Civil Procedure section 2—

---

[1]This litigation actually began as two separate lawsuits: *Robin v. Doctors Office Centers Corporation* (N.D. Ill.), 84—C—10798 (the *"Robin I"* action), which was consolidated in 1989 with *Robin v. Katten, Muchin, Zavis, Pearl & Galler* (N.D. Ill.), 85—C—08913 (the *"Robin II"* action).

619. (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(3).) This motion was withdrawn before the trial court ruled on it.

Meanwhile, the Federal court granted Steiner Diamond's motion for judgment on the pleadings as to the third-party actions (for contribution) against it. Even though the Federal court had previously denied Steiner Diamond's motion to dismiss these claims for contribution on the grounds that there was no cause of action for implied or statutory contribution among joint tortfeasors, it now granted essentially the same relief by means of a judgment on the pleadings.[2] Between the two motions, Illinois and Federal law had settled in Steiner Diamond's favor. The Federal judge in ruling said she was treating the motion for judgment on the pleadings as an appropriate procedural device to reconsider after the close of pleadings the motion to dismiss which she had earlier denied. The Federal court then dismissed Steiner Diamond's counterclaims without prejudice for lack of subject matter jurisdiction. Thereafter, the remaining parties in the Federal litigation settled, and the case was dismissed. The pending appeals of Steiner Diamond's judgment on the pleadings were then also voluntarily dismissed in the Seventh Circuit Court of Appeals.

At this point, the only pending litigation was Steiner Diamond's State court claim. FMP, which had earlier filed and withdrawn a motion to dismiss this claim, now moved again to dismiss the contract-based indemnification claim. Two grounds were alleged: first, that the failure to file this claim as a compulsory counterclaim in the Federal litigation rendered it *res judicata* by operation of Federal law binding on the Illinois courts; and, second, that the indemnification provision sued upon did not apply to Steiner Diamond's expenses in defending the third-party actions.

The trial court dismissed Steiner Diamond's claim with prejudice, holding that although the terms of the indemnification agreement were applicable to the expenses claimed, Steiner Diamond's claim was barred, as it was a compulsory counterclaim and, as such, was required to be filed with the Federal lawsuit. Steiner Diamond appealed the dismissal of its lawsuit, and FMP appealed the determination that the indemnification clause was applicable to Steiner Diamond's expenses.

---

[2]Although this was not a final and appealable order, as the investors' claims were still not disposed of, the Federal court made the requisite certificate of finality and appealability and this judgment was noticed and docketed to the United States Court of Appeals for the Seventh Circuit.

■ In its appeal, Steiner Diamond maintains that its State court claim for indemnification of defense expenses is not a compulsory counterclaim and, therefore, filing of this action in Federal court was not mandated by law. Federal Rule 13(a) defines a compulsory counterclaim as one which "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim." (Fed. R. Civ. P. 13(a).) The Federal rules require that such claims be asserted before the underlying action proceeds to a final judgment. No independent jurisdictional basis is required for such claims.

Although each of the parties cites numerous cases to support its respective arguments as to whether or not the counterclaim at issue is compulsory, the weight of authority favors Steiner Diamond's position that the counterclaim at bar did not arise out of the same transaction or occurrence as the Federal action and is therefore neither compulsory nor time-barred. Steiner Diamond first relies on the case of *Allstate Insurance Co. v. Valdez* (E.D. Mich. 1962), 29 F.R.D. 479. In *Allstate*, the insurance company sued its insured for a declaratory judgment, alleging that its auto insurance policy did not cover a certain loss. The counterclaim involved the insured's expenses in defending the action in chief. In deciding that the claims did not arise out of the same transaction or occurrence, the Federal court noted that the "transaction or occurrence" which was the subject matter of the action by Allstate involved the accidental discharge of a shotgun while it was being loaded into an automobile belonging to Valdez. The court further stated that it could not be said that Valdez's claim for attorney fees arose out of the same transaction or occurrence as the case in chief. The court further noted that the facts or law relative to the accident and its coverage under the insurance policy were not relevant or decisive in deciding whether Valdez had a right to attorney fees.[3] Likewise, in the present case, the parties' respective claims did not arise out of the same transaction or occurrence. The initial claims against FMP and DOC (the Robin actions) were based on the alleged fraud in the prospectus. The third-party plaintiff claims against Steiner Diamond were for contribution and/or indemnification for its part in any fraudulent statements which might be proven. Steiner Diamond's State court counterclaim was for expenses incurred in defending this litigation and was based solely on the indemnity provision

---

[3]The trial court also noted that Valdez's claim for attorney fees did not mature until the declaratory judgment action concluded. This same argument could be made in the instant action, as Steiner Diamond could not know the amount of its litigation expenses until the conclusion of the case in chief.

of the underwriting agreement.[4] Based on the reasoning in *Allstate*, the Steiner Diamond counterclaim could not be said to arise out of the same transaction or occurrence. Furthermore, as in *Allstate*, the facts and the law relative to the case against Steiner Diamond (for alleged misstatements in the prospectus) would have no bearing on the contract law indemnity claim.

■ *Federman v. Empire Fire & Marine Insurance Co.* (2d Cir. 1979), 597 F.2d 798, also supports the above analysis. In this case, the main action concerned fraud in a public offering of stock. Goldberg, an attorney in the law firm responsible for preparation of the prospectus, was brought in on a third-party complaint (as was Steiner Diamond in the case at bar). Goldberg counterclaimed for damages for injurious involvement and fraud. In dismissing Goldberg's claim for lack of jurisdiction, the trial court stated that although Goldberg's claims bore some factual relationship to the original claim for securities fraud, it could not be said that they arose out of the same transaction or occurrence for the purpose of invoking ancillary jurisdiction. (*Federman*, 597 F.2d at 811.) Additionally, the *Federman* court noted that the factors most generally considered by the court as indicators of the same transaction or occurrence are: (1) identity of facts between original claim and counterclaim; (2) mutuality of proof; and (3) legal relationship between original claim and counterclaim. In *Federman*, the events necessary to prove the counterclaim arose more than one year after the original claim and involved an entirely different legal theory. Consequently, the counterclaim at issue was found to be permissive rather than compulsory. Contrastingly, in *McDonald's Corp. v. Levine* (1982), 108 Ill. App. 3d 732, 439 N.E.2d 475, a counterclaim was found to be compulsory when it was determined that the two claims would involve the use of the very same evidence. In fact, it was found that the very use of certain evidence in the first case was the violation charged in the second case. In *McDonald's*, the first case involved an antitrust violation, while the counterclaim alleged the violation of an eavesdropping act due to the use of certain documents in the antitrust action. In finding the counterclaim compulsory, the *McDonald's* court determined that the two actions were logically related, as both grew out of the franchise agreement and involved the use of the same documents. See also *Newburger, Loeb & Co. v. Gross* (2d Cir. 1977), 563 F.2d 1057 (in which the trial court evaluated nine

---

[4]Steiner Diamond also filed several Federal court counterclaims which are discussed further in this opinion.

counterclaims and determined that those which were logically related to and "inextricably intertwined with" the main case (a stock churning claim) were compulsory, while those which involved different proofs (such as the partnership claims) were unrelated and therefore permissive[5]).

■ The facts and evidence involved in the case at bar more closely resemble the scenario described in *Federman* than that in *McDonald's*. The proofs necessary to the counterclaim, that is the underwriting agreement containing the indemnity clause and the expense of Steiner Diamond's defense, are not the same as those necessary to prove the claim of FMP against Steiner Diamond (a claim alleging Steiner Diamond's role in drafting the prospectus and requesting contribution from Steiner Diamond if any misstatement or omission in the prospectus was actually proven). Although FMP argues that proof of the absence of fraud would be an element in Steiner Diamond's counterclaim, we do not agree. Only if FMP raises the issue of Steiner Diamond's possible involvement with the alleged misrepresentations in the prospectus as an affirmative defense to the indemnification claims would such proof of such alleged fraud become necessary. Moreover, we note that throughout the Federal case (a suit against FMP for fraudulent misrepresentation in the prospectus), FMP firmly argued the absence of any fraud in the prospectus. For the abovementioned reasons we find that Steiner Diamond's counterclaim for indemnification of defense expenses was not compulsory and is therefore not barred by the operation of *res judicata*.

In reaching our decision that the counterclaim at issue is permissive, we also consider the Federal court's determination as regards the three counterclaims filed by Steiner Diamond in the Federal court action. These counterclaims were filed against the following individuals: (1) FMP, its general partner and chief financial officer; (2) the officers of DOC and signatories on the registration statement which contained the prospectus; and (3) DOC's lawyer and his law firm. The counterclaims were for breach of the contract that the warranties and representations in the registration statement and prospectus were true and correct. The relief requested by these claims included Steiner Diamond's expenses in responding to the discovery requests in the case against FMP as well as its own litigation expenses in de-

---

[5]The *Newburger* court further stated: "It is obvious that there was a substantial overlap between the defendants' defenses and their first, second, and fourth counterclaims; indeed proof of these defenses was tantamount to establishing defendants' case on the counterclaims." 563 F.2d at 1072.

fending itself against third-party claims for alleged complicity in the alleged misrepresentations. (Although the relief requested in these counterclaims mirrors the relief requested in the State court claim, the grounds sued upon are quite different.) When the Federal court granted Steiner Diamond's motion for judgment on the pleadings, it dismissed these counterclaims without prejudice for want of jurisdiction. This action presumes that the claims at issue were permissive, that is, based on ancillary jurisdiction provided by the case in chief. (If such claims had been compulsory, the court's jurisdiction would have endured the dismissal of the main case.) It follows that if these three counterclaims, which were substantively more relevant to the main claim, were in fact permissive and were dismissed without prejudice so that they could presumably be refiled, the action at bar is also permissive, and even if initially filed in Federal court would have suffered the same fate as its counterparts.

In its appeal, FMP argues that the trial court incorrectly determined that the indemnity clause in the underwriting agreement is inapplicable to the claim filed by Steiner Diamond. FMP contends that because of specific language in this clause, it does not apply to the parties to it, but would only cover third-party claims. In support of this premise, FMP calls attention to the indemnity clause's notification procedure, as well as its provision that the indemnifying party is entitled to participate in and assume the defense of any litigation. We fail to see how FMP can claim that it was not notified of the indemnity claim, when in fact it is a named party to such litigation. Furthermore, the fact that the indemnity clause provides that FMP is entitled to assume the defense of the indemnity litigation does not preclude Steiner Diamond from filing under such clause. It merely implies that if FMP has a conflict of interest (such as it does here), it will assume the cost of the defense rather than the actual defense of the litigation at issue. FMP cites the case of *Open Kitchens, Inc. v. Gullo Development Corp.* (1984), 126 Ill. App. 3d 62, 466 N.E.2d 1313, in support of its contention that the indemnity clause does not apply to the litigation at bar. In *Gullo*, plaintiff property owner claimed damages for cracked flooring from the general contractor, who had signed a contract containing an indemnity clause providing that he would "hold [plaintiff] harmless *** from *** all claims, *** losses, expenses *** arising out of *** the performance of the Work." (126 Ill. App. 3d at 63-64.) The contract further stipulated that the contractor "shall defend at its own expense, any actions based thereon." (126 Ill. App. 3d at 65.) The *Gullo* court found that this language provided indemnity to the plaintiff only if he was sued (by a

third party) for the contractor's faulty work. Since the plaintiff had not been sued in the claim at issue (but, rather, was himself suing the contractor), the indemnity clause was found not to apply. In the Steiner Diamond action, Steiner Diamond, unlike the *Gullo* plaintiff, has in fact been sued and has incurred litigation expenses for defending itself against the very type of action provided for in the indemnity agreement—the expenses of an underwriter defending itself against charges of untrue or misleading statements in DOC's prospectus. The indemnity clause sued upon is thus explicitly applicable to the litigation at bar.

Accordingly, we reverse the judgment of the trial court and remand for further proceedings consistent with the views expressed herein.

Reversed and remanded.

LORENZ and MURRAY, JJ., concur.

