JOHN N. KAPOOR, Plaintiff-Appellant, v. FUJISAWA PHARMACEUTICAL COMPANY, LTD., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—97—3212

Opinion filed August 11, 1998.

Dan K. Webb, W. Gordon Dobie, Jennifer J. Demmon, John E. Mooney, and Cornelius M. Murphy, all of Winston & Strawn, of Chicago, for appellant.

Robert J. Kopecky, Sallie G. Smylie, and Maria R. Ticsay, all of Kirkland & Ellis, of Chicago, and Richards & O'Neil, LLP, of New York, New York, for appellees.

JUSTICE TULLY delivered the opinion of the court:

Plaintiff, John N. Kapoor, filed a five-count action against defendants which alleged: breach of a hold-harmless agreement against Fujisawa USA, Inc. (FUSA); breach of a merger agreement against Fujisawa Pharmaceutical Co., Ltd. (Fujisawa), and FUSA; tortious interference with contract against the individual defendants; tortious interference with business expectancy against all defendants; and defamation against FUSA and Noboru Maeda. The trial court dismissed plaintiff's complaint pursuant to section 2—619(a)(3) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(3) (West 1996)), finding that there was another pending federal action between the "same parties" for the "same cause." Plaintiff appeals the trial court's order pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301).

For the reasons that follow, we affirm.

## FACTUAL BACKGROUND[1]

Plaintiff is the former chairman and chief executive officer of

---

[1]Initially, we note that compliance with Supreme Court Rule 341 (134 Ill. 2d R. 341) is of importance in every appeal. Specifically, Rule 341(e)(6) requires that the statement of facts in the appellant's brief shall be "stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." 134 Ill. 2d R. 341(e)(6). Plaintiff disregarded this rule by including arguments, with no citations to the record, in the fact section of his brief such as "certain defendants decided that extorting money from Kapoor would allow them to save face within the organization," and "[r]ather than take the heat for their own mismanagement, defendants decided to deflect internal and public criticism by falsely blaming Dr. Kapoor for FUSA's troubles." This court has held that the supreme court rules are not merely suggestions and that "it is within our discretion to strike [plaintiff's] brief and dismiss the appeal based on violations of these rules. [Citation.]" *Geers v. Brichta*, 248 Ill. App. 3d 398, 400, 618 N.E.2d 531, 533

Lyphomed, Inc., a manufacturer of proprietary and generic drugs.[2] Defendant Fujisawa is a Japanese pharmaceutical company. Defendant FUSA is a Delaware corporation and a wholly owned subsidiary of Fujisawa. The remaining individual defendants served at relevant times as officers and/or directors of Lyphomed, Fujisawa and/or FUSA. Between 1980 and 1986, Lyphomed filed false applications and information with the Food and Drug Administration (FDA) in connection with applications to manufacture and sell generic drugs. In 1983, Lyphomed filed an initial public offering with the Securities and Exchange Commission (SEC) but did not disclose its FDA violations. In December 1984, Fujisawa purchased Lyphomed shares from Lyphomed and plaintiff, who at that time did not disclose any information about Lyphomed's FDA violations. Fujisawa continued to purchase Lyphomed stock from Lyphomed and plaintiff in several transactions. According to Fujisawa, when it bought the stock, it relied on various forms, annual reports and other statements that plaintiff issued, none of which disclosed the FDA application violations. By 1986, Fujisawa replaced plaintiff as Lyphomed's largest shareholder. During 1987 and 1988, the FDA cited Lyphomed as having good manufacturing practices (GMP) problems at some of its factories. The FDA later issued Lyphomed a regulatory letter which stated that Lyphomed would not receive any new approvals for generic or patented drugs until it cured the GMP problems. Plaintiff and Lyphomed then reassured Fujisawa that Lyphomed was addressing the problems. Lyphomed cured the problems.

On April 28, 1989, as part of a stipulation and settlement of certain derivative and class action suits against them—*Murphy v. Kapoor* and *Harman v. Lyphomed, Inc.*[3] —plaintiff and Lyphomed entered into an indemnification agreement, pursuant to which Lyphomed agreed that it:

"shall indemnify [plaintiff] for all amounts paid by [him] or that [he is] legally obligated to pay in settlement of the Litigations for an amount up to $9.99 million (the 'Settlement Amount') plus interest and for [his] reasonable expenses incurred in connection with the Litigations (including attorneys' fees) and shall further indemnify [him] and hold [him] harmless from and against any

---

(1993). However, we decline to take such a severe action at this time.

[2]"A proprietary drug is a new patented drug, while generic drugs are versions of patented drugs ordinarily sold after the patent on the proprietary drug expires." *Fujisawa Pharmaceutical Co. v. Kapoor*, 936 F. Supp. 455, 457 (N.D. Ill. 1996).

[3]*Murphy v. Kapoor*, No. 89—C—3265 (N.D. Ill.); *Harman v. Lyphomed, Inc.*, No. 88—C—0476 (N.D. Ill.).

other claim, loss, liability or expense arising out of the Litigations, any facts alleged or conclusions asserted therein, the settlement of the Litigations, their indemnification by [Lyphomed], and any subsequent litigation concerning any of the foregoing matters."

*Murphy* was a stockholder derivative action based on breach of fiduciary duty and gross negligence theories. The complaint alleged that, to obtain growth, plaintiff was responsible for Lyphomed operating "at or beyond capacity" and for Lyphomed's lack of adequate quality control procedures, which led to Lyphomed's failure to comply with FDA requirements. *Harman* was a class action which alleged that plaintiff and Lyphomed violated federal securities laws by failing to disclose discrepancies and alterations in Lyphomed's laboratory records and by concealing Lyphomed's FDA violations.

On August 31, 1989, Lyphomed, Fujisawa and FUSA executed a merger agreement, pursuant to which Fujisawa and FUSA agreed to honor Lyphomed's obligations under the April 28 indemnification agreement. In addition, Fujisawa and FUSA agreed to indemnify and hold harmless plaintiff and other Lyphomed officers and directors "to the fullest extent permitted by law" for claims asserted by Lyphomed or its shareholders based on acts or omissions that occurred before the effective date of the merger. In addition to the Lyphomed stock it bought earlier, Fujisawa purchased more Lyphomed stock on the open market and acquired Lyphomed on April 5, 1990. It merged Lyphomed into FUSA the next day.

In August 1992, Fujisawa and FUSA sued plaintiff in the United States District Court for the Northern District of Illinois. Their complaint alleged that, as a result of Lyphomed's false and misleading FDA generic drug applications, FUSA was required to withdraw several drugs from the market and was unable to obtain FDA approval of other drugs. In addition, the complaint alleged that plaintiff knew of and participated in fraud against the FDA and failed to disclose material facts about the FDA generic drug applications to Fujisawa in connection with Fujisawa's purchase of Lyphomed's stock. The complaint asserted claims for violations of federal securities laws and the Racketeer Influenced and Corrupt Organizations (RICO) Act (18 U.S.C. § 1962(c) (1994)), as well as claims for state law fraud, breach of fiduciary duty, and breach of warranty. Fujisawa and FUSA alleged that they suffered damages of more than $100 million.

On July 25, 1996, the federal district court granted summary judgment for plaintiff on the securities fraud claims because they were time-barred. Finding that the complaint failed to plead adequately a "pattern" of racketeering by plaintiff, the court dismissed the RICO count for failure to state a claim upon which relief may be granted. In

addition, the court declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed them without prejudice. *Fujisawa Pharmaceutical Co.*, 936 F. Supp. at 458-67. On July 31, 1996, FUSA and Noboru Maeda issued a press release regarding the court's July 25 decision. On June 16, 1997, the Seventh Circuit Court of Appeals reversed the dismissal of the RICO claim, holding that FUSA had adequately pleaded a "pattern." of racketeering by plaintiff. *Fujisawa Pharmaceutical Co. v. Kapoor*, 115 F.3d 1332 (7th Cir. 1997). According to the appellate court:

"Kapoor controlled Lyphomed and, if those allegations are believed, used his control to conduct the business of Lyphomed through a pattern of racketeering activity extending over six years and consisting of innumerable mail and wire frauds successfully designed to lure Fujisawa into investing more and more of its money in Lyphomed, much of which went into Kapoor's pocket." *Fujisawa Pharmaceutical Co.*, 115 F.3d at 1338.

The appellate court remanded the case to the district court for further proceedings, and the action is still pending.

Before the federal court of appeals issued its decision, plaintiff filed his state action. In his amended complaint plaintiff alleged that Fujisawa and FUSA, by proceeding with the federal action, breached the April 28, 1989, and August 31, 1989, contracts under which they expressly agreed to hold plaintiff harmless for the claims made in the federal action. Plaintiff also alleged that the individual defendants tortiously interfered with those contracts and that defendants defamed him in the July 31, 1996, press release. The amended complaint contained the following claims: (1) breach of a hold-harmless agreement against FUSA; (2) breach of a merger agreement against Fujisawa and FUSA; (3) tortious interference with contract against the individual defendants; (4) tortious interference with business expectancy against all defendants; and (5) defamation against FUSA and Noboru Maeda.

The trial court dismissed the amended complaint pursuant to section 2—619(a)(3). The trial court found:

"[I]t is clear from reading the intendment of the averments of the Amended Complaint in the light most favorable to Kapoor, that the grievances he has and the causes of action he seeks to state in this Illinois trial court all arise out of and are inextricably intertwined with the transactional occurrences that form the core subject matter of the ongoing federal district court litigation. This court finds that for purposes of [section 2—619(a)(3)] there is another cause of action currently pending between the 'same parties' for the 'same cause' and that for reasons of comity, judicial economy and the efficient overall administration of justice it would be prudent to dismiss this state court suit."

At the time of plaintiff's state action, there was another pending suit in Delaware. In *Kapoor v. Fujisawa Pharmaceutical Co.*,[4] plaintiff sued Fujisawa and FUSA, seeking indemnification for fees and expenses he incurred in defending the federal action. His amended complaint sought fees and expenses for prosecuting the Illinois state action. The amended complaint alleged in part that his Illinois action was "asserted as part of his defense to Fujisawa's and FUSA's claims in the Federal Action." In addition, plaintiff alleged that the Illinois action sought "to defeat Fujisawa's Federal Action and to secure his rights to be 'held harmless' by Fujisawa and FUSA for his losses and expenses as a result of the unfounded allegations by Fujisawa and FUSA in the Federal Action." The Delaware action is still pending.

## ISSUE PRESENTED FOR REVIEW

On appeal, plaintiff argues that the trial court erred in granting defendants' section 2—619(a)(3) motion to dismiss his complaint because the pending federal court action is not for the "same cause" or between the "same parties" as his state court action.

## OPINION

██ ██ A defendant may move for dismissal of an action under section 2—619(a)(3) upon the grounds that there is "another action pending between the same parties for the same cause." 735 ILCS 5/2—619(a)(3) (West 1996). Section 2—619(a)(3) is an "inherently procedural" device aimed at avoiding duplicative litigation (*Miller v. Thomas*, 275 Ill. App. 3d 779, 786, 656 N.E.2d 89, 93 (1995)), and it should be construed liberally (*Schnitzer v. O'Connor*, 274 Ill. App. 3d 314, 653 N.E.2d 825 (1995)). Even if the threshold "same parties" and "same cause" requirements are met, section 2—619(a)(3) relief is not mandatory. *Zurich Insurance Co. v. Baxter International, Inc.*, 173 Ill. 2d 235, 248, 670 N.E.2d 664 (1996) (Freeman, J., specially concurring, joined by McMorrow, J.). A court should consider the following factors when deciding whether to dismiss an action pursuant to section 2—619(a)(3): "(1) comity; (2) the prevention of multiplicity, vexation, and harassment; (3) the likelihood of obtaining complete relief in the foreign jurisdiction; and (4) the *res judicata* effect of a foreign judgment in the local forum." *In re M.K.*, 284 Ill. App. 3d 449, 456, 672 N.E.2d 271, 275 (1996), citing *Kellerman v. MCI Telecommunications Corp.*, 112 Ill. 2d 428, 447-48, 493 N.E.2d 1045, 1053-54 (1986) (stating that the factors should be considered when deciding whether a section 2—619(a)(3) stay is warranted). Furthermore, the trial court must weigh the prejudice to the nonmovant if the motion is granted

---

[4]*Kapoor v. Fujisawa Pharmaceutical Co.*, No. 96C—06—50 (Del.).

against the policy of avoiding duplicative litigation. *Doutt v. Ford Motor Co.*, 276 Ill. App. 3d 785, 659 N.E.2d 89 (1995). We will reverse the trial court's decision on a section 2—619(a)(3) motion to dismiss only if it abused its discretion. *Zurich Insurance Co.*, 173 Ill. 2d 235, 670 N.E.2d 664; *Kellerman*, 112 Ill. 2d 428, 493 N.E.2d 1045.

■ In defining whether the parties are the same, the parties need not be identical. *Schnitzer*, 274 Ill. App. 3d at 318. The "same parties" requirement is satisfied where the litigants' interests are sufficiently similar, even if the litigants differ in name or number. *Schnitzer*, 274 Ill. App. 3d 314, 653 N.E.2d 825.

■ In evaluating whether two actions are for the same cause, a crucial inquiry is "whether the two actions arise out of the same transaction or occurrence [citation], not whether the legal theory, issues, burden of proof or relief sought materially differ between the two actions." *Terracom Development Group, Inc. v. Village of Westhaven*, 209 Ill. App. 3d 758, 762, 568 N.E.2d 376, 378 (1991). "Neither the parties nor the cause need be identical to the prior pending suit." *Forsberg v. City of Chicago*, 151 Ill. App. 3d 354, 372, 502 N.E.2d 283, 297 (1986). Section 2—619(a)(3) refers to the "same cause," not to the "same cause of action," (*Bank of Northern Illinois v. Nugent*, 223 Ill. App. 3d 1, 584 N.E.2d 948 (1991)) and it may be invoked "where there is a substantial similarity of issues" between the two actions (*Tambone v. Simpson*, 91 Ill. App. 3d 865, 867, 414 N.E.2d 533, 534 (1980)). "The central inquiry, then, is whether the relief requested rests on substantially the same facts." *Philips Electronics, N.V. v. New Hampshire Insurance Co.*, 295 Ill. App. 3d 895, 906, 692 N.E.2d 1268, 1277 (1998). The inquiry is guided by common sense. *Illinois Central Gulf R.R. Co. v. Goad*, 168 Ill. App. 3d 541, 522 N.E.2d 845 (1988).

■ Plaintiff contends that the trial court erred in dismissing his complaint pursuant to section 2—619(a)(3) because the pending federal court action is not for the "same cause" or between the "same parties" as his state court action. We disagree.

First, the trial court did not abuse its discretion in finding that the actions were for the "same cause." In this case, the two actions arose out of the same occurrence, which is plaintiff's alleged concealment of Lyphomed's FDA violations from Fujisawa while it was buying Lyphomed stock. The federal action involved those allegations, which are contained in the remaining pending RICO cause of action. Although the state action involves different causes of action alleged by plaintiff, they arose out of plaintiff's alleged concealment of the FDA violations. In the state action, plaintiff sought primarily to prevent defendants from suing him for the alleged concealment and sought to defeat alleged defamatory statements that he is a racketeer. As plaintiff

himself alleged in his Delaware action against Fujisawa and FUSA, plaintiff's state action seeks to avoid liability for the allegations in the federal action. In the state action, plaintiff alleged that Fujisawa and FUSA breached its contracts, which agreed to "indemnify [him] and hold [him] harmless from and against any other claim, loss, liability or expense" resulting from the settled derivative and class actions "and any subsequent litigation concerning any of the foregoing matters." The settled derivative and class actions involved substantially the same allegations against plaintiff as in the federal action.

The present case is similar to *Illinois Central*, in which a railroad employee initiated a federal suit against his employer for work-related injuries. *Illinois Central*, 168 Ill. App. 3d at 542-43, 522 N.E.2d 846-47. The parties reached a verbal settlement, but the plaintiff refused to sign the written settlement agreement. The defendant then filed a state action seeking a declaration that the verbal settlement agreement was binding and enforceable. The circuit court dismissed the complaint pursuant to section 2—619(a)(3) because it found that there was a pending federal action for the "same cause" between the "same parties." On appeal, this court found that the sole purpose of the state action was to create a defense to the federal action and that, regardless of the outcome of the state action, the prevailing party would use the result in the federal action. The same is true in the present case. The primary reason for the state action is to defeat defendants' action against plaintiff for his alleged concealment of facts during the sale of Lyphomed stock. As plaintiff himself asserted in the Delaware action, the Illinois state action was asserted as part of the defense to the federal action and it sought "to defeat Fujisawa's Federal Action and to secure his rights to be 'held harmless' by Fujisawa and FUSA for his losses and expenses as a result of the unfounded allegations" in the federal action. If plaintiff would have prevailed in the state action, he would have used that ruling against Fujisawa and FUSA in the federal action. Furthermore, the state and federal actions would involve overlapping evidence regarding whether plaintiff concealed information and committed securities fraud. See *International Games, Inc. v. Sims*, 111 Ill. App. 3d 922, 444 N.E.2d 736 (1982); see also *McDonald's Corp v. Levine*, 108 Ill. App. 3d 732, 743-44, 439 N.E.2d 475, 482-83 (1982) (section 2—619(a)(3) dismissal proper where "the very use of certain evidence in the first case was the violation charged in the second case"). As in *Illinois Central*, "for us to hold the cases do not arise from the same occurrence would be contrary to common sense and [would] defeat the purpose of [section 2—619(a)(3)]." *Illinois Central*, 168 Ill. App. 3d at 545, 522 N.E.2d at 847.

In support of his argument that the actions were not for the same

cause, plaintiff relies on *Steiner Diamond & Co. v. Flashner Medical Partnership*, 236 Ill. App. 3d 199, 599 N.E.2d 1323 (1992), and *Southwest Financial Bank v. McGrath*, 200 Ill. App. 3d 736, 558 N.E.2d 441 (1990). Both cases are distinguishable from the present case. First, *Steiner* involved compulsory counterclaim issues, not a section 2—619(a)(3) dismissal. At trial, the plaintiff's state contract-based indemnification claim was dismissed because it was held to be a compulsory counterclaim to a related federal action. A compulsory counterclaim is one that " 'arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim.' " *Steiner*, 236 Ill. App. 3d at 203, 599 N.E.2d at 1325, quoting Fed. R. Civ. P. 13(a). The federal action against the plaintiff alleged the plaintiff's role in drafting a prospectus and requested contribution from the plaintiff if any misstatement or omission in the prospectus was proven. The plaintiff's state claim was for the indemnification of its expenses in defending the federal action and relied on an indemnification clause in the parties' underwriting agreement. The appellate court reversed the judgment in plaintiff's favor, finding that the state claim did not arise out of the same transaction or occurrence because the proofs necessary for the state claim were not the same as the proofs necessary in the federal action. Such is not the case here, where plaintiff primarily sought to defeat the federal action and where, as we have discussed, the evidence in the state action would overlap with the evidence in the federal action. In the state action, plaintiff alleged that Fujisawa and FUSA had no evidence upon which to bring the federal action. Therefore, the allegations in the federal action would be contested in the state action and the evidence in both cases would overlap. *Southwest* is also distinguishable from the present case. In that case, the plaintiff's state suit was a mortgage foreclosure action. In the federal suit, the defendant alleged economic coercion and tort claims based on the plaintiff's assertion of a claim against life insurance proceeds. The appellate court concluded that the trial court's *sua sponte* dismissal of the state action was an abuse of discretion because "[t]he issue of mortgage foreclosure is not before the Federal court, nor are any of the underlying facts or documents which would support foreclosure." *Southwest*, 200 Ill. App. 3d at 738-39, 558 N.E.2d at 442-43. *Southwest* is not similar to the present case. As we have discussed, the state and federal causes are substantially the same for purposes of the section 2—619(a)(3) dismissal in the present case.

In addition, the trial court's finding that the actions are between the "same parties" for section 2—619(a)(3) purposes was not an abuse of discretion. The parties need not be identical. The test is satisfied if the litigants' interests are sufficiently similar, as they are in the pres-

ent case. Plaintiff's interests in both actions are sufficiently similar because in both he seeks to avoid liability for allegedly concealing information about Lyphomed's FDA violations from Fujisawa. Fujisawa's and FUSA's interests in both actions are also substantially similar because they involve their cause of action against plaintiff and recovering damages from him for committing RICO violations. The fact that the individual defendants, who are officers and directors of Fujisawa and FUSA, are not parties to the federal action does not change the result. See *Tambone*, 91 Ill. App. 3d 865, 414 N.E.2d 533. The fact that Kapoor is the plaintiff in the state action and the defendant in the federal action does not change the result either (see *Arthur Young & Co. v. Bremer*, 197 Ill. App. 3d 30, 554 N.E.2d 671 (1990)), because section 2—619(a)(3)'s purpose is to preserve judicial economy and to avoid a multiplicity of actions. Accordingly, the litigants' interests in both actions are substantially similar to satisfy the "same parties" requirement.

Moreover, we do not find that the trial court abused its discretion by failing to address any of the factors cited in *Kellerman*—comity, prevention of multiplicity, likelihood of obtaining complete relief in the foreign jurisdiction, or *res judicata. Kellerman* applied the factors in its review of a section 2—619(a)(3) stay. Subsequent cases have extended the *Kellerman* factors to apply to section 2—619(a)(3) dismissals. The present case involves a dismissal. The trial court articulated that its decision was based in part on "reasons of comity, judicial economy and the efficient overall administration of justice." Plaintiff argues that the trial court failed to cite the proper factors and performed no analysis. We first note that courts are not required to apply the factors; *Kellerman* and its progeny state that courts should, not must, consider them. In addition, several Illinois appellate cases have affirmed section 2—619(a)(3) dismissals with no citation to the *Kellerman* factors or analysis of fewer than all of them. See *Doutt*, 276 Ill. App. 3d at 788-89, 659 N.E.2d at 91-92; *Schnitzer*, 274 Ill. App. 3d at 318-22, 653 N.E.2d at 828-30; *Arthur Young & Co.*, 197 Ill. App. 3d at 47-48, 554 N.E.2d at 683; *Illinois Central*, 168 Ill. App. 3d at 543-45, 522 N.E.2d at 846-47. In fact, not all four *Kellerman* factors necessarily apply to each section 2—619(a)(3) dismissal. See *Southwest*, 200 Ill. App. 3d at 738-39, 558 N.E.2d at 442-43 (finding that "considerations of comity, multiplicity of actions and *res judicata*" did not apply); see also Annotation, 56 A.L.R.2d 335, 337 (1968) ("a stay should be distinguished from *** dismissal of an action pending determination of another action between the same persons and on the same cause of action in another jurisdiction").

In the present case, plaintiff contends that "[c]ontrary to the

Circuit Court's Order, allowing Kapoor's suit to proceed would not offend the principle of judicial comity" because the causes of action in the federal and state actions differed and "neither suit infringes upon the other forum's jurisdiction or judicial decisions." As we have discussed, the inquiry here does not focus on whether the causes of action were identical. The two actions arose out of the same occurrence. Contrary to plaintiff's argument, we do not see how the consideration of comity precludes dismissal of the state action. In addition, dismissal of the state action prevents a multiplicity of actions, as well as any associated vexation and harassment. Plaintiff also contends that dismissal was improper because he would not be able to obtain complete relief in the federal action. Plaintiff argues that he could not have brought his state action in the federal action as either a compulsive or a permissive counterclaim. See Fed. R. Civ. P. 13(a), (b). Even assuming that plaintiff is correct, any such inability to bring the counterclaims is irrelevant for purposes of a section 2—619(a)(3) dismissal because the statute is designed to avoid duplicative actions and the central inquiry is "not whether the legal theories or the relief sought materially differs between the two actions." See *Katherine M. v. Ryder*, 254 Ill. App. 3d 479, 487, 627 N.E.2d 42, 47 (1993) (where, because of doctrine preventing plaintiffs from bringing pendent state law claims against state officers in federal courts, the plaintiffs were unable to assert their state law claims, appellate court found that fact irrelevant to the determination of the section 2—619(a)(3) dismissal). Finally, we do not see how *res judicata* is a relevant consideration in the context of a dismissal, as opposed to a stay. After a dismissal, there is no remaining action to which *res judicata* principles can be applied. See *Much Shelist Freed Denenberg & Ament, P.C. v. Lison*, 297 Ill. App. 3d 375, 382 (1998) ("The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars a *subsequent* action involving the same claims or demands by the same parties") (Emphasis added).

In sum, the trial court did not abuse its discretion in finding that the state and federal actions were for the "same causes" between the "same parties." The two actions arose out of plaintiff's alleged concealment of Lyphomed's FDA violations from Fujisawa while it was buying Lyphomed stock and the litigants' interests in both actions were sufficiently similar. Moreover, the trial court did not abuse its discretion in its application of the *Kellerman* factors. In light of the forego-

ing, we affirm the circuit court's order dismissing plaintiff's state action pursuant to section 2—619(a)(3).

Affirmed.

McNULTY, P.J., and RAKOWSKI, J., concur.