SECOND DIVISION
FILED: June 22, 2010

No. 1-09-3136

WHITTMANHART, INC.,                    )      APPEAL FROM THE
                                       )      CIRCUIT COURT OF
     Plaintiff-Appellant,              )      COOK COUNTY.
                                       )
v.                                     )      Nos.  08 L 13460
                                       )            09 L 7560
                                       )
CA, INC., and NIKU, LLC,               )      HONORABLE
                                       )      LEE PRESTON,
     Defendants-Appellees.             )      JUDGE PRESIDING.


     JUSTICE HOFFMAN delivered the opinion of the court:

     Whittmanhart, Inc., ("Whittmanhart") appeals from an order
of the circuit court dismissing its complaint against CA, Inc.,
("CA") and Niku, LLC, ("Niku") pursuant to section 2-619(a)(3) of
the Code of Civil Procedure ("the Code") (735 ILCS 5/2-619(a)(3)
(West 2008)), on the basis that another action was pending
between the parties in New York.  For the reasons which follow,
we reverse and remand the matter back to the circuit court for
further proceedings.

     On November 12, 2008, CA and its wholly-owned subsidiary,
Niku, filed suit against Whittmanhart in the United States
District Court for the Eastern District of New York (hereinafter
"the federal action").  According to the federal complaint,
Whittmanhart and CA entered into an End User License Agreement
("EULA") in March of 2006.  The EULA granted Whittmanhart a

license for a group of computer software products marketed by CA under the "Clarity" brand name. The EULA also provided that Whittmanhart was entitled to receive professional services from CA pursuant to a Statement of Work ("SOW") to be agreed upon by Whittmanhart and CA on a future date. In June of 2006, CA and Whittmanhart entered into a SOW, whereby CA agreed to assist Whittmanhart in its implementation and development of the Clarity software. In consideration for CA's performance under the SOW, Whittmanhart was to pay CA an agreed-upon hourly rate for the CA employees working on the project, as well as the expenses incurred by those employees. The federal complaint further alleged that, during the course of the project, CA and Niku issued a number of invoices to Whittmanhart for professional services provided under the EULA and the SOW, which remain unpaid. As relief, CA and Niku sought payment of the outstanding invoices, asserting claims for breach of contract and account stated. CA and Niku also sought attorney fees and costs pursuant to a provision of the SOW which allowed the prevailing party in a judicial action to recover the costs and expenses incurred in enforcing its rights under the agreement.

On December 3, 2008, counsel for Whittmanhart informed the district court of its intention to move to dismiss the federal action due to the lack of subject matter jurisdiction. Counsel explained that, because all three parties were citizens of Delaware, federal diversity jurisdiction did not exist.

On December 3, 2008, at 2:01 p.m. Eastern Standard Time, CA and Niku filed an action against Whittmanhart in the Supreme Court of New York in the County of Suffolk (hereinafter "the first New York State action"). That complaint contained essentially the same allegations and claims as those in the federal action. At 4:13 p.m. Eastern Standard Time, CA and Niku voluntary dismissed the federal action.

Later that same day, at 3:55 p.m. Central Standard Time, Whittmanhart filed a three-count complaint against CA and Niku in the Circuit Court of Cook County (hereinafter "the instant action"). According to the complaint filed by Whittmanhart, the terms of the EULA and the SOW required CA to deliver a fully functional Clarity system by December 31, 2006, and required that all invoices were to be issued monthly. In count I, Whittmanhart sought monetary damages based on CA's and Niku's alleged breach of its obligations under the EULA and the SOW by failing to deliver a fully functioning Clarity system by the stipulated date, failing to issue monthly invoices for services rendered, and failing to provide the agreed-upon professional services necessary to integrate the Clarity software with Whittmanhart's operating systems. In count II, Whittmanhart requested a judgment declaring that it had no obligation to pay CA and Niku any additional amounts under the EULA or the SOW. Finally, in count III, Whittmanhart sought to recover the attorney fees and costs it incurred in bringing the instant action.

After Whittmanhart failed to answer the complaint in the first New York State action, CA and Niku moved for a default judgment. In response, Whittmanhart filed a cross-motion to dismiss, arguing, inter alia, that it had not been properly served. On April 15, 2009, Whittmanhart's cross-motion to dismiss the first New York State action was granted based upon a lack of personal jurisdiction. On June 2, 2009, CA and Niku filed a notice of appeal from the dismissal of that action.

On April 17, 2009, CA and Niku commenced another action in the Supreme Court of New York (hereinafter "the second New York State action"), asserting claims identical to those in the first New York State action. Thereafter, on June 25, 2009, Whittmanhart filed a motion to dismiss the second New York State action based upon the pendency of the instant action and on the ground of forum non conveniens. Whittmanhart's motion was subsequently denied as untimely. Whittmanhart then appealed from the denial of its motion to dismiss the second New York State action.

On July 29, 2009, CA and Niku filed a motion to dismiss the instant action pursuant to section 2-619(a)(3) of the Code (735 ILCS 5/2-619(a)(3) (West 2008)), on the basis that there was another action pending between them and Whittmanhart for the same claims in New York State court. On October 14, 2009, the circuit court issued a written memorandum order in which it granted the motion, finding that the instant and New York actions involved

-4-

No. 1-09-3136

the same parties and the same cause; and that the discretionary factors of comity, the prevention of the multiplicity of lawsuits, Whittmanhart's ability to obtain complete relief in New York, and the res judicata effect of the New York action each weighed in favor of dismissal. This appeal followed.

On appeal, Whittmanhart argues that the circuit court abused its discretion in granting CA's and Niku's motion to dismiss. We agree.

Initially, CA and Niku assert that Whittmanhart has voluntarily agreed to litigate in New York State court. In support of their argument, CA and Niku cite to an answer Whittmanhart filed in the second New York State action on November 24, 2009, asserting affirmative defenses and three counterclaims identical to the claims Whittmanhart set forth in its complaint in the instant action. CA and Niku also cite to a notice from Whittmanhart's attorney, dated March 24, 2010, withdrawing its appeal from the denial of its motion to dismiss the second New York State action.

We note that both the answer and the notice to withdraw the appeal are not contained in the record before us, but only appear in the appendix to CA's and Niku's brief. It is well established, however, that the record on appeal cannot be supplemented by attaching documents to the appendix of a brief. McCarty v. Weatherford, 362 Ill. App. 3d 308, 311, 838 N.E.2d 337 (2005); Jones v. Police Board of the City of Chicago, 297 Ill.

No. 1-09-3136

App. 3d 922, 930, 697 N.E.2d 876 (1998). Moreover, the answer and notice withdrawing the appeal were filed after the circuit court's dismissal of the instant action on October 14, 2009. Because new evidence not before the circuit court when it rendered its decision cannot be considered by a reviewing court (Kessler v. Zekman, 250 Ill. App. 3d 172, 188-189, 620 N.E.2d 1249 (1993)), it is inappropriate for us to consider either Whittmanhart's answer or notice withdrawing its appeal in the second New York State action.

Generally, motions to dismiss do not require the circuit court to weigh facts or determine the credibility of witnesses, and, therefore, our standard of review is de novo. Overnite Transportation Co. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, 332 Ill. App. 3d 69, 73, 773 N.E.2d 26 (2002); Miller v. Thomas, 275 Ill. App. 3d 779, 786, 656 N.E.3d 89 (1995). However, a section 2-619(a)(3) motion to dismiss is inherently procedural and urges the circuit court to weigh several factors when deciding whether it is appropriate for the action to proceed. Overnite Transportation Co., 332 Ill. App. 3d at 73; Hapag-Lloyd, Inc. v. Home Insurance Co., 312 Ill. App. 3d 1087, 1090, 729 N.E.2d 36 (2000). Thus, we review the circuit court's decision to dismiss an action pursuant to section 2-619(a)(3) for an abuse of discretion. Continental Casualty Co. v. Radio Materials Corp., 366 Ill. App. 3d 345, 347, 851 N.E.2d 857 (2006).

Section 2-619(a)(3) is a procedural device designed to avoid duplicative litigation. Quantum Chemical Corp. v. Hartford Steam Boiler Inspection & Insurance Co., 246 Ill. App. 3d 557, 560, 616 N.E.2d 686 (1993). Specifically, this section allows a defendant to move for a dismissal or a stay when there is "another action pending between the same parties for the same cause." 735 ILCS 5/2-619(a)(3) (West 2008). The movant, in this case CA and Niku, bears the burden of demonstrating by clear and convincing evidence that the two actions involved the "same parties" and the "same cause." Northbrook Property & Casualty Insurance Co. v. GEO International Corp., 317 Ill. App. 3d 78, 80, 739 N.E.2d 47 (2000).

There can be no dispute that the instant action and the New York action involve the same, identical parties. Only their roles have changed.

Additionally, the record reflects that the instant action and the New York action involve the same cause. Actions present the same cause when the relief requested is based on substantially the same set of facts. In re Estate of Hoch, 382 Ill. App. 3d 866, 869, 892 N.E.2d 30 (2008). Here, both actions were based upon the same two contracts, the EULA and the SOW. While different issues may have been raised in the two actions, the critical inquiry is whether the Illinois and New York actions arose out of the same transaction or occurrence, not whether the legal theories, issues, or requested relief differ. See Kapoor

No. 1-09-3136

v. Fujisawa Pharmaceutical Co., 298 Ill. App. 3d 780, 786, 699 N.E.2d 1095 (1998).

Although CA and Niku established the threshold requirements of section 2-619(a)(3), the circuit court was not required to automatically dismiss the instant action. See In re Marriage of Epsteen, 339 Ill. App. 3d 586, 593, 791 N.E.2d 175 (2003). Rather, "[m]ultiple actions in different jurisdictions arising out of the same operative facts may be maintained where the circuit court, in a sound exercise of its discretion, determines that both actions should proceed." Zurich Insurance Co. v. Baxter International, Inc., 173 Ill. 2d 235, 244-45, 670 N.E.2d 664 (1996). In making this determination, a court should consider the following factors: (1) comity; (2) the prevention of multiplicity, vexation, and harassment; (3) the likelihood of obtaining complete relief in a foreign jurisdiction; and (4) the res judicata effect of a foreign judgment in the local forum. Combined Insurance Co. v. Certain Underwriters at Lloyd's London, 356 Ill. App. 3d 749, 754, 826 N.E.2d 1089 (2005).

Turning to the first factor, courts of different states having concurrent jurisdiction over a controversy may both proceed simultaneously until one court reaches judgment. Restatement (Second) of Conflicts of Laws § 86 (1971). Under the principles of comity, however, one state may stay or dismiss the proceeding pending before it out of respect for the other state's laws and judgments. See Continental Casualty Co., 366 Ill. App.

-8-

3d at 347; <u>May v. SmithKline Beecham Clinical Laboratories, Inc.</u>, 304 Ill. App. 3d 242, 248, 710 N.E.2d 460 (1999).

Prior to the filing of the instant action, CA and Niku filed two suits, the federal action and the first New York State action. The federal action, however, was voluntarily dismissed after it was discovered that federal diversity jurisdiction was lacking. Additionally, the first New York State action was dismissed for want of jurisdiction. The second New York State action, the only foreign action where jurisdiction over Whittmanhart was effectuated, was not filed until after Whittmanhart filed its Illinois complaint. Consequently, it appears that the instant action was the first to be properly filed. Nevertheless, the Illinois Supreme Court, in <u>A. E. Staley Manufacturing Co. v. Swift & Co.</u>, 84 Ill. 2d 245, 253, 419 N.E.2d 23 (1980) (<u>Staley</u>), held that the fact that one suit was filed prior to the other is not determinative in resolving a section 2-619(a)(3) motion to dismiss. <u>Staley</u>, 84 Ill. 2d at 252. Instead, the <u>Staley</u> court focused on whether the cause had a legitimate and substantial relation to Illinois. <u>Staley</u>, 84 Ill. 2d at 253.

The record before us reflects that Illinois has a legitimate and substantial relation to the underlying dispute. Whittmanhart's principal place of business is in Illinois. Furthermore, the EULA and the SOW contemplated performance in Illinois, and Whittmanhart's complaint alleged that a substantial

number of the events which led to the breach of the two contracts took place in Cook County, Illinois.[1]

Although CA's and Niku's principal place of business is in New York and one of the contracts, the SOW, is to be interpreted pursuant to New York law, we do not believe that New York's connection to this case outweighs Illinois' strong interest in the litigation. The second contract, the EULA, provides that it is to be interpreted pursuant to the laws of the state of California, which neither Illinois nor New York will have an expertise in applying. In addition, no evidence was presented establishing that any of the events that led to breach of the EULA and the SOW, and the commencement of this litigation,

---

[1]In its briefs before this court, Whittmanhart also alleges that most of the negotiations leading up to the execution of the EULA and the SOW occurred in Illinois. Whittmanhart's complaint, however, does not indicate where the negotiations for the two contracts took place, nor did Whittmanhart provide any affidavits or other evidentiary materials in support of this allegation. See Atkinson v. Affronti, 369 Ill. App. 3d 828, 830, 861 N.E.2d 251 (2007) (In ruling on a 2-619 motion to dismiss, a court will consider the complaint under attack, taking as true all well-pled allegations contained therein, and the evidentiary material submitted both in support of and in opposition to the motion).

occurred in New York. Based on the record before us, Illinois is clearly the more logical forum for this dispute.

Given the fact that the instant action appears to have been the first to be properly filed and that this matter has a legitimate and substantial relation to Illinois, we conclude that the principles of comity do not require the dismissal of the instant action in deference to the New York State court. Accordingly, this factor weighs against the dismissal of Whittmanhart's Illinois complaint.

Next, we consider the prevention of multiplicity, vexation, and harassment. Due to the similar nature of both actions, the dismissal of the instant action would prevent the multiplicity of lawsuits. There is no evidence, however, that Whittmanhart's claims in Illinois are intended to vex or harass CA and Niku. On balance, this factor weighs in favor of dismissal, but not strongly.

With regard to Whittmanhart's likelihood of obtaining complete relief in a foreign jurisdiction, in their New York action, CA and Niku seek to recover the amount they are allegedly owed under the EULA and the SOW. Whittmanhart's Illinois complaint contains a similar claim seeking a declaratory judgment defeating CA's and Niku's ability to recover under the EULA and the SOW. However, Whittmanhart also seeks to recover the amount it alleges it is owed because of CA's and Niku's failure to comply with the terms of the EULA and the SOW. Accordingly, the

instant action is the broader and more comprehensive of the two actions, and, therefore, there is a greater possibility of completely resolving the controversy between the parties in Illinois than in New York.

Furthermore, the dismissal of the instant action forces Whittmanhart to assert its claims against CA and Niku by way of a counterclaim in New York. In Staley, the supreme court held that the policy of avoiding duplicative litigation did not require the filing of a counterclaim in a foreign jurisdiction where the rules of that jurisdiction do not otherwise require it. Staley, 84 Ill. 2d at 253. New York does not require compulsory counterclaims. 67-25 Dartmouth Street Corp. v. Syllman, 29 A.D.3d 888, 889, 817 N.Y.S.2d 299, 301 (N.Y. 2006); Classic Automobiles, Inc. v. Oxford Resources, Corp., 204 A.D.2d 209, 209, 612 N.Y.S.2d 32, 33 (N.Y. 1994). Under the facts of this case, we conclude that the instant action is more likely to provide complete relief to the parties, thereby weighing against dismissal.

The final factor to be considered in determining whether the instant action should be dismissed under section 2-619(a)(3) is the res judicata effect of a foreign judgment in the local forum. Like in New York, counterclaims in Illinois are permissive rather than compulsory. See 735 ILCS 5/2-608(a) (West 2008); Fuller Family Holdings, LLC v. Northern Trust Co., 371 Ill. App. 3d 605, 617, 863 N.E.2d 743 (2007). Consequently, a defendant may

generally raise his or her claims against the plaintiff by way of either a counterclaim or a separate action. Corcoran-Hakala v. Dowd, 362 Ill. App. 3d 523, 530-31, 840 N.E.2d 286 (2005); Restatement (Second) of Judgments § 22(1) (1982). Res judicata bars a subsequent action only if the successful prosecution of the action would in effect nullify the judgment entered in the prior litigation. Corcoran-Hakala, 362 Ill. App. 3d at 531; Restatement (Second) of Judgments § 22(2)(b) (1982). The rationale behind this rule is that a defendant should not be required to assert his or her claims in the forum chosen by the plaintiff but should be allowed to bring suit at a time and place of his or her own selection. Restatement (Second) of Judgments § 22, Comment a, at 185-86 (1982).

As previously discussed, the instant action is broader than the New York action. Even if a judgment is entered for CA and Niku in New York, it is possible that Whittmanhart's claim that CA and Niku breached their obligations under the EULA and the SOW could still proceed. Because it cannot be said that res judicata would completely bar the instant action, this factor also weighs against dismissal.

In sum, we find that, with the exception of the prevention of the multiplicity of lawsuits, none of the discretionary factors for consideration favor a dismissal of the instant action under section 2-619(a)(3). As a consequence, we conclude that the circuit court abused its direction in granting CA's and

No. 1-09-3136

Niku's motion to dismiss.  We, therefore, reverse the dismissal of Whittmanhart's complaint and remand the matter back to the circuit court for further proceedings.

Reversed and remanded.

THEIS and KARNEZIS, JJ., concur.