# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Performance Network Solutions, Inc. v. Cyberklix US, Inc.*, 2012 IL App (1st) 110137

| | |
|---|---|
| Appellate Court Caption | PERFORMANCE NETWORK SOLUTIONS, INC., an Illinois Corporation, COUNTERWEIGHT, INC., an Illinois Corporation, ERIC S. PERKINS, WILLIAM PERKINS, and JESSE KORN, Plaintiffs-Appellants, v. CYBERKLIX US, INC., a Delaware Corporation, CYBERKLIX, INC., a Foreign Corporation, and JOHN MENEZES, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-0137 |
| Filed | February 17, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly granted defendants' motion to quash service and dismiss plaintiffs' complaint alleging breach of contract and seeking a declaratory judgment and injunctive relief pursuant to section 2-619(a)(3) of the Code of Civil Procedure, since defendants filed an earlier action in a Canadian court involving the same parties and the same transactions, plaintiffs never submitted any affidavits supporting their claims that they were not served in the Canadian suit, that they did not participate in that suit, and that there was no prior action pending, and the "*Kellerman* factors" weighed in favor of defendants. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-007948; the Hon. Jennifer Duncan-Brice, Judge, presiding. |
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | David A. Novoselsky, of Novoselsky Law Offices, of Chicago, for appellants. |
| | Patrick G. Cooke, of Patzik, Frank & Samotny, Ltd., of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE R. GORDON delivered the judgment of the court, with opinion. |
| | Justices Garcia and Palmer concurred in the judgment and opinion. |

# OPINION

¶ 1    Plaintiffs, Performance Network Solutions, Inc. (PNS), Counterweight, Inc., both Illinois corporations, and three individuals Eric Perkins, William Perkins, and Jesse Korn (collectively the Illinois plaintiffs), filed a three-count complaint in the circuit court of Cook County against defendants, Cyberklix US, Inc., a Delaware corporation, Cyberklix, a Canadian corporation, and an individual, John Menezes. The complaint alleges breach of contract and seeks a declaratory judgment and injunctive relief. Defendants filed a motion to quash service and dismiss the complaint pursuant to section 2-619(a)(3) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(3) (West 2008)), claiming that they had filed an earlier action in a Canadian court involving the same parties and that the claims arose out of the same transactions. The trial court granted defendants' motion.

¶ 2    On appeal, the Illinois plaintiffs claim that the trial court erred in dismissing their complaint under section 2-619(a)(3) of the Code, which allows dismissal when "there is another action pending between the same parties for the same cause" (735 ILCS 5/2-619(a)(3) (West 2008)), because they were not properly served with process in the Canadian court, and as a result there was no prior action pending. The Illinois plaintiffs do not claim that a section 2-619(a)(3) motion to dismiss does not apply to a Canadian court proceeding. We affirm.

¶ 3                          I. BACKGROUND

¶ 4                          A. The Parties

¶ 5    Plaintiff PSN is an Illinois corporation that designs computer security software with its principal place of business in Chicago. Plaintiff Eric Perkins, a resident of the State of Wisconsin, is the president of PNS. Plaintiffs William Perkins and Jesse Korn are residents of the State of Illinois and employees of PNS. Plaintiff Counterweight, Inc., is an Illinois corporation whose shareholders and employees include Eric, William and Jesse.

¶ 6    Defendant Cyberklix US, Inc., is a Delaware corporation with its principal place of

business in Chicago. Cyberklix US is a wholly owned subsidiary of Cyberklix, Inc., a Canadian corporation with its principal place of business in Ontario, Canada. Cyberklix US and Cyberklix also design computer security software. Defendant John Menezes, is the president and chief operating officer of Cyberklix.

¶ 7                                    B. Procedural History

¶ 8                                    1. The Canadian Lawsuit

¶ 9       On June 1, 2009, Cyberklix US and Cyberklix filed a "Statement of Claim" (Claim) in the superior court of justice located in Ontario, Canada, against the Illinois plaintiffs. According to the Claim, on May 21, 2008, Cyberklix US, PNS, and Eric entered into an "asset sales agreement" (Agreement) in the State of Illinois whereby Cyberklix US agreed to buy, and PNS agreed to sell to Cyberklix US, certain assets of PNS. A copy of the notice of the Claim, dated June 1, 2009, is included in the record and addressed to PNS, Counterweight, Eric, William and Jesse.

¶ 10      Pursuant to the Agreement, Cyberklix agreed to pay an initial sum in the amount of $700,000 to PNS on a specified "closing date," defined in the Agreement as May 27, 2008. Cyberklix also agreed to pay a second and final sum in the amount of $300,000 by the first anniversary of the closing date. PNS and Eric agreed to noncompetition and confidentiality provisions, prohibiting them from disclosing or using confidential information developed by PNS and Eric, and prohibiting them from engaging in competition with Cyberklix US or Cyberklix for a period of four years commencing May 21, 2008.

¶ 11      Also pursuant to the Agreement, Eric agreed to enter into an employment agreement with Cyberklix US, in which he was to be employed for a period of two years as a chief technical officer unless otherwise terminated. The Agreement also provided that Cyberklix was obligated to offer William and Jesse employment positions with Cyberklix US, as office manager and director of application delivery, respectively.

¶ 12      According to the Claim, Cyberklix paid the initial sum of $700,000. William and Jesse were both hired by Cyberklix US on May 27, 2008. Eric terminated his employment on February 5, 2009. William terminated his employment with Cyberklix US on February 27, 2009, and Jesse terminated his employment on March 27, 2009. Counterweight was incorporated in the State of Illinois on February 24, 2009. After its incorporation, Eric, William, and Jesse became shareholders and employees of Counterweight.

¶ 13      Also according to the Claim, before the first anniversary of the closing date and before Cyberklix paid the second and final sum of $300,000, Cyberklix alleges that Counterweight was in direct competition with Cyberklix. In response, Cyberklix US and Cyberklix filed their Canadian lawsuit against PNS, Counterweight, Eric, William and Jesse seeking injunctive relief and damages.

¶ 14                                   2. The Illinois Lawsuit

¶ 15      More than one month later, on July 7, 2009, PNS, Counterweight, Eric, William and Jesse filed this three-count complaint in the circuit court of Cook County against Cyberklix

US, Cyberklix, and John Menezes. In the complaint, the Illinois plaintiffs (1) allege that Cyberklix breached the Agreement by failing to pay the second and final sum of $300,000; (2) seek a declaratory judgment for William, Jesse and Counterweight that they are not bound by the restrictive provisions of the Agreement because they were not signatories to the Agreement; and (3) seek injunctive relief concerning the defendants' Canadian lawsuit which "unlawfully restrain[s] William, Jesse and Counterweight by proceeding in a foreign jurisdiction (Canada) to seek relief against these parties despite a lack of jurisdiction and despite the failure to properly obtain service on or jurisdiction over these parties."

¶ 16                        3. Partial Judgment Entered in Canadian Court

¶ 17        On October 27, 2009, the superior court of justice in Ontario entered a written order concerning Cyberklix's Claim. The Canadian justice presiding over the matter stated that he had reviewed the record before him, including "the Statement of Claim in this action and the proof of service of the Statement of Claim on Defendants[, *i.e.*, the Illinois plaintiffs,] and the Defendants having been noted in default [as of] July 20, 2009." The Canadian justice then entered partial judgment against the Illinois plaintiffs concerning Cyberklix's request for injunctive relief. Even though the Illinois plaintiffs indicated at oral argument that the matter is not now pending before the Canadian court, the order reflects otherwise and states that "this action shall proceed to Trial to deal with the damage claims made in *** the Statement of Claim." The Canadian justice also ordered that "this Order shall be served on the defendants."

¶ 18                   4. Defendants' Motion to Dismiss in Illinois Lawsuit

¶ 19        On December 7, 2009, Cyberklix US, Cyberklix, and Menezes filed in the circuit court of Cook County a motion to quash service pursuant to section 2-301(a) of the Code (735 ILCS 5/2-301(a) (West 2008)) and dismiss the Illinois plaintiffs' complaint pursuant to section 2-619(a)(3) (735 ILCS 5/2-619(a)(3) (West 2008)). Concerning the dismissal of the complaint, defendants argue that the Illinois plaintiffs' complaint should be dismissed because it involves the same parties and claims arising out of the same transactions that are already pending in a Canadian court. The Illinois plaintiffs respond that dismissal is not proper because they were not served with process in the Canadian lawsuit and have not otherwise participated in that lawsuit.

¶ 20        On December 23, 2010, the trial court entered a written order granting defendants' motion. In regard to dismissing the complaint, the trial court found that "there is a case pending in the [Canadian] Court concerning these same parties and purports to state claims arising out of the same transactions, namely the [Agreement]." The trial court also found that the Canadian justice had already determined that "the Canadian Court has jurisdiction over the matter" and that the Illinois plaintiffs in the case at bar "have been properly served" because they "were found to be in default as of July 20, 2009." The trial court also found that the Canadian court had "already entered partial judgment in this matter." The court further found that "while [the Illinois] plaintiffs assert that they have not been served in the Canadian action, no [Illinois] plaintiff has submitted any affidavits to refute the Canadian

Justice's conclusion that not only had service been effected but they have been appropriately defaulted."

¶ 21    In determining whether dismissal was proper, the trial court next considered factors such as "comity; the prevention of multiplicity, vexation, and harassment; the likelihood of obtaining complete relief in the foreign jurisdiction; and the *res judicata* effect of a foreign judgment in the local forum" and found that those factors favored dismissal. Specifically, the court found that it must recognize other jurisdictions; that the identity of the parties and claims were similar in both lawsuits; and that defendants did not demonstrate that the Canadian court did not follow proper procedures or that they would be unable to obtain relief in the Canadian lawsuit. In sum, the trial court concluded that "the [Illinois] plaintiffs have already seen the direction the Canadian case is taking and are now trying to switch forums," which "cannot be condoned by this Court." The trial court then granted defendants' motion.

¶ 22    This timely appeal followed.

¶ 23                                    II. ANALYSIS

¶ 24    On appeal, the Illinois plaintiffs claim that the trial court erred in dismissing their complaint under section 2-619(a)(3) of the Code, because they were not properly served with process in the Canadian court, and as a result, there was no "prior action pending."

¶ 25                              A. Standard of Review

¶ 26    The Illinois plaintiffs claim that our standard of review is *de novo*. Generally, section 2-619 motions present a question of law, which we review *de novo. DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006); *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006); *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 27    However, the decision to grant or deny a section 2-619(a)(3) motion is discretionary with the trial court, unlike motions under other subsections of section 2-619. *Combined Insurance Co. of America v. Certain Underwriters at Lloyd's, London*, 356 Ill. App. 3d 749, 754 (2005). The purpose of section 2-619(a)(3) is to avoid duplicative litigation. *In re Marriage of Epsteen*, 339 Ill. App. 3d 586, 593 (2003). A section 2-619(a)(3) motion to dismiss is inherently procedural and urges the trial court to weigh several factors when deciding whether it is appropriate for the action to proceed. *Overnite Transportation Co. v. International Brotherhood of Teamsters*, 332 Ill. App. 3d 69, 73 (2002); *Hapag-Lloyd (America), Inc. v. Home Insurance Co.*, 312 Ill. App. 3d 1087, 1090 (2000). Thus, on appeal, a trial court's decision to dismiss pursuant to section 2-619(a)(3) will not be overturned absent an abuse of that discretion. *Continental Casualty Co. v. Radio Materials Corp.*, 366 Ill. App. 3d 345, 347 (2006). An abuse of discretion occurs when the ruling is "arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." *Favia v. Ford Motor Co.*, 381 Ill. App. 3d 809, 815 (2008).

¶ 28                 B. Section 2-619(a)(3)

¶ 29       Section 2-619(a)(3) of the Code provides that a defendant to seek a dismissal or a stay when "there is another action pending between the same parties for the same cause." 735 ILCS 5/2-619(a)(3) (West 2008); *Village of Mapleton v. Cathy's Tap, Inc.*, 312 Ill. App. 3d 264, 266 (2000). It is the burden of a section 2-619(a)(3) movant to demonstrate through clear and convincing evidence that the two actions involve (1) the same parties; and (2) the same cause. *Hapag-Lloyd (America), Inc.*, 312 Ill. App. 3d at 1091.

¶ 30       In the case at bar, there is no dispute that the Canadian lawsuit and the Illinois lawsuit involve the same parties. The difference between the parties in the Canadian lawsuit and the Illinois lawsuit is that the chief executive officer of Cyberklix, John Menezes, was added as a defendant in the Illinois lawsuit. This court has found that the "same parties" requirement of section 2-619(a)(3) is satisfied " 'where the litigants' interests are sufficiently similar, even though the litigants differ in name or number.' " *Combined Insurance Co. of America*, 356 Ill. App. 3d at 754 (quoting *Doutt v. Ford Motor Co.*, 276 Ill. App. 3d 785, 788 (1995)). Here, the parties in both lawsuits are sufficiently similar, and thus, we conclude that the "same parties" requirement under section 2-619(a)(3) was met.

¶ 31       The two lawsuits in the case at bar involve the same cause. Lawsuits present the same cause when "the relief requested is based on substantially the same set of facts." *Whittmanhart, Inc. v. CA, Inc.*, 402 Ill. App. 3d 848, 853 (2010). Here, both lawsuits are based upon the provisions in the parties' Agreement. See, *e.g.*, *Whittmanhart*, 402 Ill. App. 3d at 853 (finding "same cause" requirement met when both lawsuits were based on the same contracts). While different issues may have been raised in the two lawsuits or different relief may have been sought, "the crucial inquiry is whether both arise out of the same transaction or occurrence, not whether the legal theory, issues, burden of proof, or relief sought materially differs between the two actions." *Jackson v. Callan Publishing, Inc.*, 356 Ill. App. 3d 326, 337 (2005). Thus, we conclude that the "same cause" requirement was also met.

¶ 32                 C. Four *Kellerman* Factors

¶ 33       Even if the "same cause" and "same parties" requirements are met, section 2-619(a)(3) does not mandate automatic dismissal. *Combined Insurance Co. of America*, 356 Ill. App. 3d at 754. Rather, in its discretion, the trial court should consider four additional factors: "(1) comity; (2) the prevention of multiplicity, vexation, and harassment; (3) the likelihood of obtaining complete relief in a foreign jurisdiction; and (4) the *res judicata* effect of a foreign judgment in the local forum." *Hapag-Lloyd (America), Inc.*, 312 Ill. App. 3d at 1091 (quoting *Kellerman v. MCI Telecommunications Corp.*, 112 Ill. 2d 428, 447-48 (1986), citing *People ex rel. Department of Public Aid v. Santos*, 92 Ill. 2d 120, 125 (1982)). These four factors are also known as the "*Kellerman* factors." *Combined Insurance Co. of America*, 356 Ill. App. 3d at 754. Courts are not required to apply all four *Kellerman* factors. *Kapoor v. Fujisawa Pharmaceutical Co.*, 298 Ill. App. 3d 780, 789-90 (1998) (courts "should," not "must," consider them); *Kellerman*, 112 Ill. 2d at 447-48 (four "factors that a court should consider"); see, *e.g.*, *Doutt*, 276 Ill. App. 3d at 788-89 (not considering any of the *Kellerman* factors); *Schnitzer v. O'Connor*, 274 Ill. App. 3d 314, 318-22 (1995) (not considering any

of the *Kellerman* factors). In fact, not all four *Kellerman* factors necessarily apply to each section 2-619(a)(3) dismissal. *Kapoor*, 298 Ill. App. 3d at 789-90. For example, this court has found that *res judicata* is not a relevant consideration in the context of dismissal, as opposed to a stay, since after a dismissal, there is no remaining action to which *res judicata* principles can be applied. *Kapoor*, 298 Ill. App. 3d at 790.

¶ 34    This court has defined the doctrine of "comity" as a " 'recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to the international duty and convenience and to the rights of its own citizens who are under the protection of its laws.' " *In re Marriage of Kohl*, 334 Ill. App. 3d 867, 880-81 (2002) (quoting *Clubb v. Clubb*, 402 Ill. 390, 399-400 (1949), citing *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)); *People ex rel. Ickes v. Rushworth*, 294 Ill. 455, 463 (1920). Under the doctrine of comity, courts may defer to the laws or interests of a foreign country and decline to exercise jurisdiction that is otherwise properly asserted. See, *e.g.*, *Société Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 543 n.27 (1987) ("Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states."). The decision to grant or deny comity by a trial court will not be reversed absent an abuse of discretion. *In re Marriage of Kohl*, 334 Ill. App. 3d at 881.

¶ 35    This court has defined the doctrine of "*res judicata*" as a bar on a subsequent action only if the successful prosecution of the action would in effect nullify the judgment entered in the prior litigation. *Corcoran-Hakala v. Dowd*, 362 Ill. App. 3d 523, 531 (2005). *Res judicata* promotes judicial economy by preventing repetitive litigation and also protects parties from being forced to bear the unjust burden of relitigating essentially the same case. *Arvia v. Madigan*, 209 Ill. 2d 520, 533 (2004).

¶ 36    In their reply brief, the Illinois plaintiffs cite *Doutt v. Ford Motor Co.*, 276 Ill. App. 3d 785 (1995), for an additional factor that a court must also weigh, *i.e.*, "the prejudice that would result to the nonmovant if the motion is granted against the policy of avoiding duplicative litigation." *Doutt*, 276 Ill. App. 3d at 789; see also *Kapoor*, 298 Ill. App. 3d at 785-86 (same); *Arthur Young & Co. v. Bremer*, 197 Ill. App. 3d 30, 47 (1990) (same). The *Doutt* court cited *Arthur Young & Co.* for this "additional" factor, which in turn cited *Kellerman*. See *Doutt*, 276 Ill. App. 3d at 789; *Arthur Young & Co.*, 197 Ill. App. 3d at 47. However, *Kellerman* did not specifically state that "a court must weigh prejudice to the nonmovant," as the *Doutt* court stated. Rather, *Kellerman* stated that "a court should consider" the four factors listed above. See *Kellerman*, 112 Ill. 2d at 447-48. It appears *Doutt*, *Arthur Young & Co.*, and *Kapoor* meant that in weighing the prejudice to the nonmovant, a court should consider the four *Kellerman* factors, not that a court should consider prejudice to nonmovant as a separate factor.

¶ 37    Our review of the record in this case shows that the trial judge considered the *Kellerman* factors and found that they weighed in favor of dismissal. We cannot say that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would take the same view.

¶ 38    The Illinois plaintiffs claim that comity weighs in their favor because Canada has "little

to no interest in this matter." However, "[c]omity is to be accorded to an act of a foreign court as long as that court is of competent jurisdiction and *** the laws and the public policy of the forum state are not violated." *Ransom v. A.B. Dick Co.*, 289 Ill. App. 3d 663, 669 (1997). The Illinois plaintiffs do not argue that the Canadian court is not a competent jurisdiction or that Canadian public policy violates the laws and public policy of Illinois. Rather, comity favors dismissal here because the Canadian court stated in its written order that it considered Cyberklix US's and Cyberklix's Claim and "proof of service on [Illinois plaintiffs]" and then acquired jurisdiction over these parties. The record shows that the Canadian court had entered partial judgment against the Illinois plaintiffs and reserved the judgment on the damages claims following a future trial. The Canadian partial judgment was entered before defendants here filed their motion to dismiss the Illinois plaintiffs' complaint pursuant to section 2-619(a)(3) of the Code. *Cf. Kaden v. Pucinski*, 263 Ill. App. 3d 611, 617 (1994) (finding that the court where the lawsuit was first filed should defer to the court that acquired jurisdiction second because the second court "has already entered a substantive ruling").

¶ 39        Second, the prevention of multiplicity, vexation, and harassment weighs in favor of dismissal because, due to the similar identity of the parties and claims in both lawsuits, dismissing the Illinois lawsuit, which was filed after the Canadian lawsuit, would prevent the multiplicity of lawsuits. The Illinois plaintiffs concede that dismissal would prevent the multiplicity of lawsuits, but argue that dismissing their complaint in Illinois "facilitates vexation and harassment" because the Illinois "plaintiffs and their counsel would be required to travel internationally for each and every court appearance when all the evidence [and] witnesses *** are located in Illinois." However, any defendant to a lawsuit filed in a foreign state would be expected to appear and answer a plaintiff's allegations in that foreign state. If, as the Illinois plaintiffs claim, subject matter jurisdiction rests in an Illinois court, then the Illinois plaintiffs could argue in Canada that the Canadian court lacks subject matter jurisdiction. However, there is no indication in the record, nor do the Illinois plaintiffs claim, that they have attempted to seek a dismissal of the Canadian lawsuit based on lack of subject matter jurisdiction and the court refused or improperly denied their request. In addition, Cyberklix, the parent company of Cyberklix US, is a Canadian corporation; thus, we cannot say that Cyberklix intended to vex or harass the Illinois plaintiffs by filing its claim in Canada.

¶ 40        Third, we find nothing in the record that shows that the Illinois plaintiffs would be unable to obtain complete relief through the Canadian court's adjudication of the issues. The Illinois plaintiffs argue that "[n]either party can obtain complete relief in Canada" because the Illinois defendants cannot enforce a Canadian order in the United States requiring a United States corporation and United States residents to adhere to the noncompetition and confidentiality provisions in the parties' agreement. However, under the Uniform Enforcement of Foreign Judgments Act, a Canadian judgment "may be filed in the office of the circuit court for any county of this State." 735 ILCS 5/12-652(a) (West 2008). A judgment filed or registered under this Act shall be construed to be an original Illinois judgment from the date it is filed with the clerk of the circuit court and for purposes of enforcement and revival, shall be treated in exactly the same manner as an Illinois judgment

entered on that same date. 735 ILCS 5/12-652(a) (West 2008).

¶ 41   Fourth, the case at bar involves a dismissal. As previously noted, *res judicata* is not a relevant consideration in the context of dismissal, since after a dismissal, there is no remaining action to which *res judicata* principles can be applied. *Kapoor*, 298 Ill. App. 3d at 790.

¶ 42   Considering the requirements to support a dismissal under section 2-619(a)(3), the four *Kellerman* factors, as well as the trial court's analysis of those factors, we cannot say that the trial court abused its discretion in dismissing the Illinois lawsuit pursuant to section 2-619(a)(3) of the Code.

¶ 43   We next turn to the Illinois plaintiffs' specific contention concerning the trial court's error in dismissing the Illinois lawsuit because they had never received service of process in the Canadian court, and, therefore, there is no "prior action pending" as required by section 2-619(a)(3). Specifically, the Illinois plaintiffs argue that the written order from the Canadian court shows that the Canadian justice "believed [that] he had jurisdiction over the matter, but it does not reflect that the Canadian [justice] ever held that service has in fact been effected on the [Illinois plaintiffs]."

¶ 44   "The purpose of service of process is twofold." *Equity Residential Properties Management Corp. v. Nasolo*, 364 Ill. App. 3d 26, 31 (2006) (citing *Bell Federal Savings & Loan Ass'n v. Horton*, 59 Ill. App. 3d 923, 926 (1978)). First, it serves the purpose of giving notice to those whose rights are about to be affected by the plaintiff's action. *Nasolo*, 364 Ill. App. 3d at 31. Second, it vests jurisdiction in the court over the person whose rights are to be affected by the litigation. *Nasolo*, 364 Ill. App. 3d at 31. The Hague Service Convention governs formal service of process to be effected between participating nations, which include Canada and the United States. See Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, art. 1 *et seq*., Nov. 15, 1965, 20 U.S.T. 361.

¶ 45   The Illinois plaintiffs argue that because there is no evidence that service was effectuated and that it is undisputed that the Illinois plaintiffs never appeared in Canada, they have "the right to bring this lawsuit to 'directly or collaterally' proceed on a cause of action brought in Illinois against an Illinois corporation rather than be barred by a supposed 'prior proceeding'." For support, the Illinois plaintiffs rely on the Illinois Supreme Court's decision in *Morey Fish Co. v. Rymer Foods, Inc.*, 158 Ill. 2d 179 (1994).

¶ 46   In *Morey Fish Co.*, the plaintiffs filed a lawsuit in federal court against Morey Fish House and the owners of Morey Fish House. The owners also owned a separate business, named Morey Fish Company, which was not named in the complaint. The federal district court entered judgment against the owners and Morey Fish House. The plaintiffs then filed a motion to modify the federal district court's judgment and enter judgment against Morey Fish Company, doing business as Morey Fish House. The defendants objected on the grounds that Morey Fish Company was never named in the complaint nor served with a summons. The federal district court granted the plaintiffs' motion. *Morey Fish Co.*, 158 Ill. 2d at 182-85.

¶ 47   The defendants filed an action in the circuit court of Cook County to enjoin enforcement

of a federal district court judgment. The defendants objected to the amendment arguing that Morey Fish Company was never a named party in the complaint and never served with a summons and that plaintiffs took no action to join Morey Fish Company. The circuit court dismissed the complaint for injunctive relief and the appellate court affirmed. The Illinois Supreme Court found that the question of jurisdiction had not been litigated in the federal district court because "Morey Fish Company has never been made a party to a lawsuit in the federal district court, nor has it ever voluntarily appeared so that the question of jurisdiction over its person could be litigated." *Morey Fish Co.*, 158 Ill. 2d at 187. Therefore, the supreme court concluded that the trial court erred in dismissing Morey Fish Company's complaint for injunctive relief because a judgment rendered by a court which fails to acquire jurisdiction over either of the parties or the subject matter of the litigation may be attacked and vacated at any time or in any court, either directly or collaterally. *Morey Fish Co.*, 158 Ill. 2d at 186-87 (citing *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 309 (1986)).

¶ 48 *Morey Fish Co.* is distinguishable from the case at bar. Here, the Canadian court stated in its written order of October 27 that it reviewed the record and "the proof of service of the Statement of Claim on [the Illinois plaintiffs]." The Illinois trial court found that the Canadian court acquired jurisdiction over the Illinois plaintiffs, who, unlike in *Morey Fish Co.*, were named parties to the Canadian lawsuit and have the opportunity to appear in the Canadian court for the limited purpose of challenging personal and subject matter jurisdiction.

¶ 49 The Illinois plaintiffs' specific contention concerning service of process strays from the analysis of a section 2-619(a)(3) dismissal. Again, our analysis of the trial court's dismissal pursuant to section 2-619(a)(3) of the Code concerns whether there was another lawsuit pending and if those two lawsuits involved the same parties and concerned the same claims. The additional four *Kellerman* factors weigh any prejudice to the nonmovant. If there is a question of whether service of process was not properly effectuated on the Illinois plaintiffs in the Canadian court is an issue to be litigated, then the Canadian court is the proper forum for the Illinois plaintiffs to contest that issue, which the trial court also found.

¶ 50 In the case at bar, the Canadian lawsuit was filed before the Illinois lawsuit and the Canadian justice had found the Illinois plaintiffs in default and entered partial judgment against them. The written order from the Canadian court stated that the issue of damages is to be determined at a later trial, and thus, that lawsuit is still pending. As discussed above, the two lawsuits involve the same parties and the same claims. As a result, we cannot say that the trial court abused its discretion in dismissing the Illinois lawsuit pursuant to section 2-619(a)(3).

¶ 51                                          III. CONCLUSION

¶ 52 For the above reasons, the judgment of the circuit court of Cook County dismissing the Illinois plaintiffs' complaint pursuant to section 2-619(a)(3) of the Code is affirmed.

¶ 53    Affirmed.