# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Midas International Corp. v. Mesa, S.p.A.*, 2013 IL App (1st) 122048

---

| | |
|---|---|
| Appellate Court Caption | MIDAS INTERNATIONAL CORPORATION, Plaintiff-Appellant, v. MESA, S.p.A., Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-12-2048 |
| Filed | March 27, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over contracts under which an Illinois automobile specialty business agreed to cooperate with a similar Italian business in developing the Illinois company's "Midas System" in other countries, the trial court properly dismissed the Illinois company's breach of contract action filed in Illinois on the ground that the same cause of action was pending between the same parties in Italy, since the Italian company filed its action first, the parties agreed that disputes could be resolved in either Italy or Illinois, the trial court did not err in concluding that the Illinois company would not be prejudiced by bringing its action as a counterclaim in Italy, and the connection to Illinois was not so strong that dismissing the Illinois action would be unreasonable. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-1380; the Hon. John C. Griffin, Judge, presiding. |
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | Kirkland & Ellis LLP, of Chicago (John F. Hartmann, Bradley H. Weidenhammer, and Debra K. Lefler, of counsel), for appellant. |
| | Jenner & Block LLP, of Chicago (Craig C. Martin and Paul B. Rietema, of counsel), for appellee. |
| Panel | JUSTICE STERBA delivered the judgment of the court, with opinion. Presiding Justice Neville and Justice Pierce concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiff-appellant Midas International Corporation appeals from an order of the circuit court granting defendant-appellee Mesa, S.p.A.'s motion to dismiss its breach of contract action pursuant to section 2-619(a)(3) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(3) (West 2010)), on the basis that the same cause of action is pending between the same parties in Milan, Italy. On appeal, Midas maintains that the court erred in its dismissal because the Milan action was not for the same cause as the Chicago action, as each arose out of a different contract; or, alternatively, that considerations of comity and the need to prevent multiplicity and harassment favored proceeding with the Chicago action. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3    This case arises out of two contracts executed in October 1998 between Midas and Magneti Marelli, S.p.A. (Marelli),[1] both of which are in the business of automotive repair and service. The agreement for strategic alliance (ASA) provides that the parties will cooperate to develop the "Midas System" in specified countries throughout Europe as well as Brazil for a period of 15 years. The "Midas System" is defined as "Midas's unique system for the establishment, management and operation of automotive specialty shops." Specifically, Midas agreed to use its "proprietary know-how" to provide support and give advice to Marelli in the areas of marketing, operations management, shop development, and real estate selection, among others. The ASA specifies that disputes arising thereunder will be resolved by way of arbitration in Geneva, Switzerland, under the UNCITRAL arbitration rules in accordance with Swiss law.

¶ 4    Attached as annex C to the ASA is the license agreement, also signed in October 1998.

---

[1]In 2001, Marelli assigned its rights under these agreements to Magneti Marelli Services S.p.A., which subsequently changed its name to Mesa, S.p.A.

The license agreement grants Marelli the right to use and authorize others to use both the "Midas System" as well as "Licensed Marks"[2] in the territory specified in the ASA. The scope of the licenses is limited to activities taken in connection with the performance of services in the automotive repair and service industry. In exchange for the use of the "Midas System" and "Licensed Marks," Marelli agreed to pay Midas an initial license fee of $16,000,000, as well as monthly royalties based on the gross revenue of all retail shops in the specified territory that are using Midas's intellectual property. Enforcement of the license agreement is governed by United States law, and the proper forums for resolving disputes thereunder are Chicago, Illinois, or Milan, Italy.

¶ 5     In 2009, Mesa initiated an arbitration before a Swiss tribunal on the grounds that Midas breached the ASA when it failed to make investments in projects dedicated to the needs of the Midas business in Europe. Mesa asked the arbitral tribunal to declare that it was entitled to terminate both the ASA and the license agreement and receive monetary relief. The arbitral tribunal found that it had no authority to rule on claims arising from the license agreement. The tribunal reasoned that although the license agreement may have an "economic link" to the ASA, because each agreement contained separate and distinct forum selection clauses, the tribunal was incompetent to decide any dispute regarding the license agreement. As such, the tribunal dismissed Mesa's claim that it was entitled to terminate the license agreement without examining its merits.

¶ 6     Ultimately, in March 2011, the tribunal found that the ASA imposed on Midas a duty to cooperate for the development of the "Midas System," which Midas breached. The tribunal awarded damages to Mesa, but these damages did not include a refund of royalty payments made under the license agreement.

¶ 7     Nine months after this award was issued, on December 29, 2011, Mesa filed suit against Midas in Milan, Italy, alleging that Midas was continuing to breach its cooperation obligations in the face of the findings of the arbitral tribunal (hereinafter Milan action). The Milan action begins by alleging that the ASA and the license agreement are interrelated and, therefore, a breach under the ASA "shall be construed" as a breach under the license agreement. Mesa goes on to specifically allege that Midas, as licensor, "has the obligation to develop and improve the Midas System for the duration of the Licence Agreement." Because it believed that Midas had breached this obligation, Mesa suspended 80% of its royalty payments under the license agreement beginning on December 30, 2011. According to Mesa, this represented the price of the "Midas System" which "as a matter of fact" was never actually provided to Mesa. In its complaint, Mesa seeks a declaration that this suspension of payments is lawful.

¶ 8     Approximately one month after the Milan action was filed, Midas filed the instant suit against Mesa in the circuit court of Cook County (hereinafter Chicago action). Midas's complaint, which contains a count alleging breach of contract and a count seeking declaratory judgment, alleges that it performed all conditions precedent to trigger Mesa's

_____

[2]Licensed Marks are "all presently registered trademarks and service marks, together with any trademarks or service marks which may be registered by Midas in the future, in the Territory."

obligation to make royalty payments in full. Accordingly, Midas alleges that Mesa has no basis in law or fact to refuse to pay 80% of the monthly royalty payments due under the license agreement.

¶ 9 Shortly after the Chicago action was filed, Mesa made a motion to stay or dismiss under section 2-619(a)(3) of the Code (735 ILCS 5/2-619(a)(3) (West 2010)), arguing that the Milan action and the Chicago action involved both the same cause and the same parties. After hearing arguments on the motion, the circuit court issued a written order dismissing Midas's complaint without prejudice. The court found that the license agreement was inextricably intertwined with the ASA and held:

> "On the face of both Italian and Illinois complaints, each party alleges breach of the License Agreement. *** The past actions between Midas and Mesa, and the duties and obligations under the License Agreement are at issue in both cases. *** Because the pending Italian action was filed first, and constitutes the same cause as this current action, the motion to stay or dismiss should be granted."

In reaching this conclusion, the court also considered principles of comity, prevention of multiplicity, and which court could provide complete relief, and found that on balance, these factors favored dismissal. Further, the court determined that Midas would not suffer any prejudice if the case was dismissed because it could bring a counterclaim in Italy to obtain relief.

¶ 10 Midas timely filed this appeal.

¶ 11 ANALYSIS

¶ 12 Section 2-619(a)(3) of the Illinois Code of Civil Procedure allows for dismissal where "there is another action pending between the same parties for the same cause." 735 ILCS 5/2-619(a)(3) (West 2010). Dismissal under section 2-619(a)(3) is a procedural tool used to avoid duplicative litigation. *Kapoor v. Fujisawa Pharmaceutical Co.*, 298 Ill. App. 3d 780, 785 (1998). To that end, the statute should be construed liberally. *Schnitzer v. O'Connor*, 274 Ill. App. 3d 314, 318 (1995). We will not reverse a trial court's decision on a motion to dismiss pursuant to this section absent an abuse of discretion. *Hastings Mutual Insurance Co. v. Ultimate Backyard, LLC*, 2012 IL App (1st) 101751, ¶ 22.

¶ 13 In the instant case, no one disputes that the parties in both the Milan and Chicago actions are the same. Instead, Midas argues that the circuit court abused its discretion in finding the suits were for the same cause. Actions involve the same cause where the relief requested rests on substantially the same set of facts. *Village of Mapleton v. Cathy's Tap, Inc.*, 313 Ill. App. 3d 264, 266 (2000). "The crucial inquiry is whether the two actions arise out of the same transaction or occurrence, not whether the legal theory, issues, burden of proof or relief sought materially differs between the two actions." *Id.* In other words, the purpose of the two actions need not be identical; it is enough that there is a substantial similarity of issues between them. *Overnite Transportation Co. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 332 Ill. App. 3d 69, 76 (2002).

¶ 14 We begin our analysis by comparing the allegations of both causes of action. Turning first to the Milan action, Mesa alleges that it is entitled to reduce the royalty payments

-4-

mandated by the license agreement because Midas failed to comply with its obligation to cooperate in the development and improvement of the "Midas System," one of the licensed products. The Chicago action, on the other hand, alleges that Midas did in fact comply with its contractual obligations, and it was Mesa that breached the license agreement when it unilaterally decided to reduce its royalty payments. On their face, these allegations appear to be mirror images of each other: Midas seeks a finding that Mesa breached the license agreement when it failed to make full royalty payments, while Mesa contends it was entitled to remit reduced royalty payments because Midas shirked its own obligations under the license agreement.

¶ 15 However, Midas argues that notwithstanding the multiple references to breach of the license agreement in the Milan action, Mesa's claims in fact arise under the ASA. In support, Midas directs us to the language of the license agreement, which reads in pertinent part:

> "Midas International Corporation ('Midas') for, and in consideration of, the promises and covenants herein contained, hereby grants to Magneti Marelli, S.p.A. ('Licensee') the exclusive right, license and privilege (the 'License') to use and authorize others to use the Midas System and the Licensed Marks ***."

According to Midas, this agreement imposes on it only the obligation to grant Mesa the right to *use* the "Midas System." Because the license agreement makes no explicit reference to a duty to cooperate and develop that system, Midas asks us to conclude that Mesa's claims cannot possibly arise under it. We decline to do so.

¶ 16 Our task under section 2-619(a)(3) is not to go behind the face of the complaint and consider the merits, or lack thereof, of a party's allegations. Instead, we will take all well-pled allegations as true. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 184 (1997) (motions to dismiss under section 2-619 admit all well-pled allegations in the complaint and reasonable inferences to be drawn therefrom). Here, the Milan action is premised on Mesa's allegation that the license agreement and the ASA are related. This is not a mere conclusory allegation, but is in fact supported by language from both agreements. First, the ASA explicitly states that the conditions of the license agreement "are of the essence" to the ASA. Further, several terms, including "Midas System" appear in both agreements. Specifically, the ASA explains what is meant by "Midas System"–Midas's "famous trademarks, valuable goodwill and know-how"–and the license agreement, annexed to the ASA, grants Mesa the right to use that system. The thrust of Mesa's argument is that because of Midas's alleged failure to cooperate in developing the system, Mesa has not been provided with a "Midas System" at all, and therefore, Midas has breached the license agreement. It may very well be that the Italian court will reject Mesa's interpretation of the license agreement and conclude that Midas's duty to assist in developing an operable "Midas System" is independent of Mesa's duty to pay royalties for the use of the system. However, this is not a conclusion we can draw in ruling on a motion to dismiss.

¶ 17 Irrespective of whether both complaints arise under the license agreement, Midas also contends that because the allegations of each action are temporally distinct and require proof of different facts, they cannot stem from the same cause. Specifically, Midas argues that the Milan action is premised on Midas's alleged breach of duty to cooperate, which occurred

months before Mesa's failure to pay the full amount of royalties, the conduct giving rise to the Chicago action.

¶ 18   *Illinois Central Gulf R.R. Co. v. Goad*, 168 Ill. App. 3d 541 (1988), is instructive on this issue. There, the defendant filed suit in federal court pursuant to the Federal Employers' Liability Act (FELA) after he sustained injuries while employed by the plaintiff. *Goad*, 168 Ill. App. 3d at 542. The parties had previously reached a verbal settlement in which the defendant agreed to release the plaintiff from liability in exchange for monetary compensation, but the defendant declined to sign the written agreement. *Id.* Subsequently, the plaintiff filed a complaint in state court seeking a declaration that the verbal agreement was binding. *Id.* at 542-43. The circuit court granted the defendant's motion to dismiss this declaratory judgment action pursuant to section 2-619(a)(3), but on appeal, the plaintiff argued the federal and state complaints were not "for the same cause" because the former was a FELA action, while the latter alleged breach of contract. *Id.* at 543-44. We rejected the plaintiff's argument and declined to read section 2-619(a)(3) so restrictively. *Id.* Though both actions stemmed from different facts, the sole purpose of the state action was to create a defense to the action pending in federal court. *Id.* We reasoned that whatever the outcome of the state action, the prevailing party would necessarily use that result in the federal action. *Id.* It was this relationship between the cases that prompted us to affirm the judgment of the trial court. See *id.*

¶ 19   The same relationship exists in the case *sub judice*. The purpose of the Milan action is to preemptively defend against any claim that Mesa breached its duty to make monthly royalty payments, which is what Midas alleges in its Chicago action. Further, the prevailing party in the Chicago action will almost certainly use the result in the Milan action. If the circuit court found Mesa owed the full amount of royalties and was not entitled to a reduction, then Midas would use that determination against Mesa before the Italian court. Conversely, if the court found in favor of Mesa, then Midas would have no defense to the Milan action. Accordingly, just as the court in *Goad*, we hold that common sense points to the conclusion the two cases arise from the same cause. *Id.* at 545; see also *Cathy's Tap*, 313 Ill. App. 3d at 267 (similarly analyzing *Goad* and concluding that where two cases are premised on resolution of a single question, they are for the same cause).

¶ 20   *Philips Electronics, N.V. v. New Hampshire Insurance Co.*, 295 Ill. App. 3d 895 (1998), relied on by Midas, does not compel a different result. There, the court found that actions were not "for the same cause" where one involved coverage under an insurance policy and another concerned the insurer's breach of fiduciary duty to the insured. *Philips Electronics*, 295 Ill. App. 3d at 906. In *Philips*, not only did the two actions stem from two different sets of facts separated in time, but the two actions were wholly independent from each other, in that there was no indication the result in one case would impact the result in the other. *Id.* at 906-07. In contrast, here the outcome in one action will determine the outcome of the other action. As such, this case is more closely analogous to *Goad* and *Cathy's Tap*, and we agree with the circuit court that the Milan and Chicago actions are for the same cause.

¶ 21   A finding that the same cause and same party requirements of section 2-619(a)(3) are met does not mandate dismissal, however. The circuit court must then weigh prejudice to the non-movant if the motion is granted against the policy of avoiding duplicative litigation to

determine whether both suits should proceed. *Performance Network Solutions, Inc. v. Cyberklix US, Inc.*, 2012 IL App (1st) 110137, ¶¶ 33, 36. This should involve consideration of the following factors: "comity; the prevention of multiplicity, vexation, and harassment; the likelihood of obtaining complete relief in the foreign jurisdiction; and the *res judicata* effect of a foreign judgment in the local forum." *Combined Insurance Co. of America v. Certain Underwriters at Lloyd's, London*, 356 Ill. App. 3d 749, 754 (2005) (citing *Kellerman v. MCI Telecommunications Corp.*, 112 Ill. 2d 428, 447-48 (1986)). Importantly, courts are not required to consider each *Kellerman* factor (*Kapoor*, 298 Ill. App. 3d at 789), nor is the list all inclusive; a trial court may consider other factors which bear on exercising its discretion (*Kaden v. Pucinski*, 263 Ill. App. 3d 611, 617 (1994) (citing *Natural Gas Pipeline Co. of America v. Phillips Petroleum Co.*, 163 Ill. App. 3d 136, 144 (1987))).

¶ 22    Because Midas relies heavily on *A.E. Staley Manufacturing Co. v. Swift & Co.*, 84 Ill. 2d 245 (1980), in arguing the circuit court misapplied these factors, it is helpful to begin by outlining the unique procedural posture of that case. In *Staley*, the circuit court dismissed an in-state action in favor of a foreign action because the court erroneously believed it had no discretion to allow the in-state action to proceed. *Staley*, 84 Ill. 2d at 249, 253. The lower court therefore did not consider any of the factors outlined above. *Id.* at 253. The supreme court reversed after conducting a *de novo* analysis of the factors outlined in *Kellerman*. *Id.* at 253-57. In the instant case, however, the circuit court recognized that dismissal of the Chicago action was within its discretion and did in fact analyze the relevant factors. Therefore, in contrast to *Staley*, we review for an abuse of discretion. See *Doutt v. Ford Motor Co.*, 276 Ill. App. 3d 785, 789 (1995) (distinguishing *Staley* on similar grounds). Importantly, this is the most deferential standard of review, with the exception of no review at all. *Combined Insurance*, 356 Ill. App. 3d at 758 (Quinn, J., dissenting) (quoting *People v. Coleman*, 183 Ill. 2d 366, 387 (1998)). As such, our role is not to substitute our judgment for that of the trial court or determine whether the court acted wisely. *Schoon v. Hill*, 207 Ill. App. 3d 601, 609 (1990). Instead, we will reverse only if the lower court's ruling is "arbitrary, fanciful, or unreasonable, or where no reasonable person would take the same view." *Favia v. Ford Motor Co.*, 381 Ill. App. 3d 809, 815 (2008). It is with these principles in mind that we evaluate the circuit court's decision to dismiss the Chicago action.

¶ 23    Initially, Midas argues that the court erred when it considered that the Milan action was first filed. Specifically, Midas challenges the accuracy of the court's statement that "[g]iving deference to the first case filed is an important factor when determining a § 2-619(a)(3) motion." While our supreme court has pointed out that the time of filing is not determinative (*Staley*, 84 Ill. 2d at 252), the court did not suggest this factor merited no consideration whatsoever. Indeed, as Mesa aptly notes, long after the decision in *Staley*, courts of review have regularly referred to the time of filing in evaluating motions under section 2-619(a)(3). See, *e.g.*, *Whittmanhart, Inc. v. CA, Inc.*, 402 Ill. App. 3d 848, 854 (2010); *In re Estate of Hoch*, 382 Ill. App. 3d 866, 870 (2008). Therefore, we cannot hold the circuit court abused its discretion in taking into account the order of filing in making its decision, particularly when there is no indication it viewed this factor as determinative. See *Skipper Marine Electronics, Inc. v. Cybernet Marine Products*, 200 Ill. App. 3d 692, 697 (1990) (finding no abuse of discretion where trial court weighed time of filing in conjunction with other factors).

¶ 24    Alternatively, Midas suggests that in the event we find the circuit court's consideration of the time of filing was not improper, it, rather than Mesa, filed first. In support of this argument, Midas offers an affidavit of Italian lawyer Frencesco Laderchi, who avers that a case does not commence before an Italian court until service is completed. Though Mesa filed its complaint in December 2011 and Midas did not file until February 2012, Midas was not served with Mesa's complaint until February 28, 2012, two weeks *after* Midas served Mesa with the complaint in the Chicago action. It is sufficient to note that for purpose of determining which case was filed first under Illinois law, it is the time of filing, and not the time of service, that is determinative. See *Skipper*, 200 Ill. App. 3d at 696. Therefore, the circuit court correctly determined that Mesa filed first.

¶ 25    Next, Midas challenges the circuit court's findings with regard to the prejudice Midas would face if it is forced to litigate in Milan, as well as the connection this case has with Illinois. Turning first to the issue of prejudice, the circuit court determined that Midas would not suffer prejudice from dismissal of its action, notwithstanding that it may have to file a counterclaim to obtain relief in Italy. To be sure, in *Staley*, one of the bases for the supreme court's reversal of the trial court's decision to grant the motion to dismiss was that dismissal would require the non-moving party to seek relief by way of counterclaim in a foreign court. *Staley*, 84 Ill. 2d at 254. However, denial of a motion to dismiss is not required as a matter of course whenever the non-moving party may need to proceed by way of counterclaim to obtain relief. See *Skipper*, 200 Ill. App. 3d at 697-98 (declining to read *Staley* as prohibiting dismissal under these circumstances); see also *Natural Gas Pipeline*, 163 Ill. App. 3d at 146 (same). This is particularly true here, where we are not faced with a party who, upon dismissal, would be unexpectedly forced to seek relief in a foreign jurisdiction as in *Staley* or *Combined Insurance*. To the contrary, Midas was well aware it could be subject to suit in Milan, as the license agreement explicitly provides that either Chicago or Milan is a potential forum for dispute resolution. As a result, we hold that it was not error for the circuit court to conclude that Midas would not suffer prejudice from bringing its cause of action as a counterclaim in Milan.

¶ 26    Nor do we agree that the connection of this case with Illinois is so substantial that it was unreasonable for the circuit court to dismiss the Chicago action after considering principles of comity and the need to prevent multiplicity of litigation, vexation and harassment. Comity refers to the practice of deferring to the laws and interests of a foreign jurisdiction out of respect, good will and cooperation. *Performance Network Solutions*, 2012 IL App (1st) 110137, ¶ 34; see also *In re Marriage of Kosmond*, 357 Ill. App. 3d 972, 978 (2005). While the Italian court in the instant case is not applying its own laws (disputes under the license agreement are governed by United States law), Italy nevertheless has an interest in this litigation. Mesa is an Italian corporation, Italy is one of the countries in which the licensed product that is the subject of the dispute–the "Midas System"–is used, and royalty payments issue from Italy. Of course, Illinois has an interest as well; it is where Midas is headquartered and also where the royalty payments are received. The circuit court considered the respective interests of both forums and found them comparable. We agree. Illinois's connection to the litigation is not so strong as to necessarily outweigh the need to avoid a multiplicity of litigation. See *Continental Casualty Co. v. Radio Materials Corp.*, 366 Ill. App. 3d 345, 349

(2006) (where insurance coverage action concerned policies issued by Illinois insurers to Illinois insured by Illinois broker, no abuse of discretion for circuit court to conclude that dismissal was proper notwithstanding connection with Illinois). Likewise, dismissing the action would also mitigate concerns of vexation and harassment as the parties would not have to put on the same case in two separate forums.

¶ 27     On balance, we cannot say the circuit court abused its discretion where it considered relevant factors and weighed the prejudice to Midas before ultimately granting Mesa's motion to dismiss the Chicago action.


¶ 28                                 CONCLUSION

¶ 29     For the reasons stated, we affirm the circuit court's order granting Mesa's motion to dismiss pursuant to section 2-619(a)(3).


¶ 30     Affirmed.