2024 IL App (1st) 231949-U

No. 1-23-1949

Order filed August 16, 2024

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| BRIDGETON LANDFILL, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2022 CH 10102 |
| | ) | |
| CONTINENTAL CASUALTY COMPANY, | ) | Honorable |
| | ) | Joel Chupack, |
| and | ) | Judge, presiding. |
| | ) | |
| NATIONAL FIRE INSURANCE COMPANY | ) | |
| OF HARTFORD, as successor to | ) | |
| TRANSCONTINENTAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court did not abuse its discretion in granting defendants' motion to stay this action pursuant to section 2-619(a)(3) of the Code of Civil Procedure where it weighed the *Kellerman* factors.

¶ 2    Plaintiff Bridgeton Landfill, LLC, appeals the circuit court's order granting defendants

Continental Casualty Company and National Fire Insurance Company of Hartford's motion to

dismiss or stay pursuant to section 2-619(a)(3) of the Code of Civil Procedure, and staying this action pending the resolution of a case between the parties filed in Missouri. The issue presented is whether the circuit court abused its discretion in finding that the factors set forth in *Kellerman v. MCI Telecommunications Corp.*, 112 Ill. 2d 428 (1986) favored a stay of this action pursuant to section 2-619(a)(3) of the Code. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Plaintiff Bridgeton Landfill is a Delaware limited liability company with its principal place of business in the state of Arizona. Defendants Continental Casualty Company and National Fire Insurance Company of Hartford, as successor to Transcontinental Insurance Company, are both Illinois insurance companies with their principal places of business in Chicago, Illinois. Bridgeton is the successor to West Lake Landfill and Rock Road Industries, which previously owned and operated a landfill located in Bridgeton, Missouri. From 1985-1990, defendants issued several commercial general liability policies to West Lake and Rock Road that covered the landfill and all other properties owned by the insured parties within the United States of America.

¶ 5     Between 2016 and 2018, three lawsuits were filed in St. Louis County, Missouri, alleging that contamination migrated from the landfill to surrounding properties, wrongfully interfering with the owners' enjoyment and use of the properties. The first lawsuit, *Michael Dailey and Robin Dailey v. Bridgeton Landfill, LLC et al.*, No. 16SL-CC04240, was filed in 2016. The second lawsuit, *John C. Kitchin, Jr., North West Auto Body Company and Mary Menke v. Bridgeton Landfill, LLC et al.*, No. 18SL-CC00613, is a putative class action filed in 2018. The third lawsuit, *Tamia Banks et al. v. Cotter Corp. et al.*, No. 18SL-CC00617, is another putative class action filed in 2018. Bridgeton was not initially named as a defendant in the *Banks* lawsuit, however a

defendant in that case, Cotter Corporation, later filed a third-party petition against Bridgeton for contribution in 2020. In March 2022, the *Dailey* plaintiffs dismissed all claims against Bridgeton pursuant to a confidential settlement agreement.

¶ 6     Defendants' claims administrator, Resolute Management, Inc., defended Bridgeton in the *Kitchin* and *Dailey* lawsuits pursuant to the "Bodily Injury Liability and Property Damage Liability" coverage provisions of the 1985 policy. Resolute, on behalf of defendants, denied coverage in the *Kitchin* and *Dailey* lawsuits under the 1987 and 1988 policies, and did not provide a coverage position regarding the 1986 and 1989 policies. All communications by Resolute came out of Chicago, Illinois. Resolute defended Bridgeton in the *Kitchin* and *Dailey* lawsuits until March 26, 2020, when Resolute informed Bridgeton that the 1985 policy had been exhausted and denied any further obligation to defend or indemnify Bridgeton in the *Kitchen* and *Dailey* lawsuits.

¶ 7     On October 12, 2022, Bridgeton filed a complaint against defendants in the circuit court of Cook County. Bridgeton sought a declaratory judgment regarding defendants' duty to defend Bridgeton in the underlying lawsuits, and, if necessary, indemnify Bridgeton in the *Kitchin* and *Banks* lawsuits. Bridgeton's complaint also included a breach of contract claim, and a claim for attorney fees under section 115 of the Illinois Insurance Code due to defendants' alleged "vexatious and unreasonable refusal to defend" Bridgeton in the underlying lawsuits. See 215 ILCS 5/155 (West 2022).

¶ 8     On November 16, 2022, defendants filed a petition for declaratory relief (case no. 22SL-CC04868) in the circuit court of St. Louis County, Missouri, seeking declaratory judgments regarding its duty to defend and indemnify Bridgeton in the underlying lawsuits under the policies. All of the plaintiffs in the underlying lawsuits, as well as Cotter Corporation, were named as

defendants in the Missouri action, though they were later dismissed from the case. The following day, defendants filed their appearance in this case. In December 2022, defendants filed a motion to dismiss or stay this action pursuant to section 2-619(a)(3) of the Code. In January 2023, defendants filed a motion to dismiss pursuant to the doctrine of *forum non conveniens*.

¶ 9    In March, Bridgeton filed a superseding motion for leave to file its first amended complaint. The first amended complaint sought to update the circuit court on certain developments in the underlying lawsuits, such as the dismissal of Cotter Corporation's third-party claims against Bridgeton in the *Banks* lawsuit, meaning that Bridgeton no longer sought indemnity from defendants for the *Banks* lawsuit. Bridgeton later filed a supplement to its superseding motion to amend which included an affidavit from the *Kitchin* plaintiffs, in which they stated that they agree to be bound by any judgment rendered in this case, that their participation in this case is unnecessary for the complete and fair adjudication of the coverage issues raised in the complaint, and that they have no objection to these issues being litigated in Illinois.

¶ 10    The circuit court issued an order staying and continuing Bridgeton's superseding motion for leave to amend until defendants' motions to dismiss were resolved. During argument, Bridgeton clarified that it was no longer seeking indemnification from defendants for the *Dailey* lawsuit, nor defense or indemnity from defendants for the *Banks* lawsuit.

¶ 11    On September 22, 2023, the circuit court issued an order in which it analyzed the four factors set forth in *Kellerman* to determine whether this action should be stayed pursuant to section 2-619(a)(3) of the Code of Civil Procedure. The circuit court concluded that the factors weighed in favor of staying this action pending the resolution of the Missouri case. The order did not address

Bridgeton's superseding motion to amend. This timely appeal followed. Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017).

¶ 12                                                    II. ANALYSIS

¶ 13    Plaintiff argues that the circuit court abused its discretion in staying this case pending resolution of the Missouri action. Section 2-619(a)(3) of the Code allows a defendant to file a motion for dismissal or stay of an action if "there is another action pending between the same parties for the same cause." 735 ILCS 5/2-619(a)(3) (West 2022). However, "even when the 'same cause' and 'same parties' requirements are met, section 2-619(a)(3) does not mandate automatic dismissal." *Kellerman*, 112 Ill. 2d at 447. Instead, the circuit court must exercise its discretion, and consider factors including: (1) comity; (2) the prevention of multiplicity, vexation, and harassment; (3) the likelihood of obtaining complete relief in the foreign jurisdiction; and (4) the *res judicata* effect of a foreign judgment in the local forum. *Id.* at 447-48. Courts use these factors to weigh prejudice to the nonmovant against the policy of avoiding duplicative litigation. *Kapoor v. Fujisawa Pharmaceutical Co.*, 298 Ill. App. 3d 780, 785-86 (1998); *Performance Network Solutions, Inc. v. Cyberklix US, Inc.*, 2012 IL App (1st) 110137, ¶ 36 (holding that a court should not consider prejudice to the nonmovant as a separate factor but should instead consider the four *Kellerman* factors in weighing potential prejudice). Courts are not required to consider all or any of the *Kellerman* factors in deciding whether a stay is warranted. *Kapoor*, 298 Ill. App. 3d at 789.

¶ 14    A circuit court's decision to stay an action pursuant to section 2-619(a)(3) is reviewed for abuse of discretion. *Hapag-Lloyd (America), Inc. v. Home Insurance Co.*, 312 Ill. App. 3d 1087, 1091 (2000). A circuit court abuses its discretion if it acts "arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceed[s] the bounds of reason and

ignore[s] recognized principles of law so that substantial prejudice result[s]." (Internal quotation marks omitted.) *Estate of Bass ex rel. Bass v. Katten*, 375 Ill. App. 3d 62, 67 (2007). Here, the parties do not dispute that this action and the Missouri action involve the same party and same cause. Instead, plaintiff argues that the circuit court abused its discretion in weighing the *Kellerman* factors and concluding that this action should be stayed.

¶ 15                                                    A. Comity

¶ 16    Plaintiff argues that the circuit court erred when it held that the principles of comity weighed in favor of staying this case. "Comity refers to the practice of deferring to the laws and interests of a foreign jurisdiction out of respect, good will and cooperation." *Midas International Corp. v. Mesa, S.p.A.*, 2013 IL App (1st) 122048, ¶ 26. The respective filing times of competing actions are not determinative when deciding a section 2-619(a)(3) motion. *A. E. Staley Manufacturing. Co. v. Swift & Co.*, 84 Ill. 2d 245, 252 (1980).

¶ 17    First, plaintiff argues that the circuit court ignored Illinois precedent by not giving sufficient weight in its comity analysis to the fact that this action was filed before the Missouri action. The circuit court afforded no weight to which action was filed first:

> "The complaint here was filed within two months of the complaint in the Missouri Case. At oral argument, counsel for [defendants] explained that it filed the Missouri Case after the case here because it had no idea that Bridgeton disputed [defendants'] coverage decision until it filed the lawsuit here. *** Under these circumstances, which case was filed first is of little value in the comity analysis."

¶ 18    Plaintiff argues that giving deference to the first case filed is an important consideration under a comity analysis. *Midas*, 2013 IL App (1st) 122048, ¶ 23. However, *Midas* merely held that

the circuit court did not abuse its discretion "in taking into account the order of filing in making its decision, particularly when there is no indication it viewed this factor as determinative." *Id.* Nowhere in *Midas* does the appellate court hold that the time of filing is an important consideration that must be included in every comity analysis. Similarly, while other cases cited by plaintiff hold that the respective filing times of the competing actions may be considered in a comity analysis, none hold that it was an abuse of discretion for a circuit court *not* to consider time of filing in its analysis. See *Copper Bend Pharmacy, Inc. v. OptumRx, Inc.*, 2021 IL App (5th) 210083-U, ¶ 17 (holding that "[t]he fact that one case was filed prior to the other is not determinative in resolving a section 2-619(a)(3) motion to stay" but that a court "may consider the progress of the litigation in each case"); *Whittmanhart, Inc. v. CA, Inc.*, 402 Ill. App. 3d 848, 854-55 (2010) (holding that filing time of the lawsuits was not determinative but the fact that the instant action was filed first weighed against dismissing the action under the principles of comity); *Skipper Marine Electronics, Inc. v. Cybernet Marine Products*, 200 Ill. App. 3d 692, 697 (1990) (holding that the circuit court did not abuse its discretion where it "considered a number of factors in addition to the time of filing in making its decision"). The fact that other courts have considered the filing times of the respective actions when evaluating a motion under section 2-619(a)(3) does not mean that the circuit court erred in holding that, under the specific facts of this case, time of filing was "of little value" to its comity analysis.

¶ 19    Plaintiff also argues that the principles of comity are not applicable where the duplicative foreign case is in its "infant pretrial stage" and no judicial decisions have been made. See *May v. SmithKline Beecham Clinical Laboratories, Inc.*, 304 Ill. App. 3d 242, 248 (1999) (holding that comity does not dictate that a stay of an Illinois case be granted where the foreign actions are "in

their infant pretrial stage"); *Hapag-Lloyd*, 312 Ill. App. 3d at 1096 ("This court also noted that principles of comity do not justify staying a matter when the competing case has only been pending for several months." (citing *SmithKline Beecham*, 304 Ill. App. 3d at 248)). However, other Illinois courts have deferred to a foreign action under the principles of comity even though both cases had only been recently filed and no substantive judgments had been made. See, *e.g.*, *Midas*, 2013 IL App (1st) 122048, ¶¶ 8, 9, 26 (holding that the circuit court did not abuse its discretion in holding that comity favored dismissal of Illinois action even though the actions had been filed within one month of each other and no substantive rulings in the foreign action had been entered).

¶ 20    Finally, plaintiff argues that the circuit court erred because it considered choice of law as part of its comity analysis. The circuit court found that Missouri law applied to the construction of the insurance policies:

> "More important is the connection of the State of Missouri to the cause. Missouri has more of an interest in determining the rights, duties and obligations of the Policies that were issued in Missouri and will be interpreted in accordance with Missouri's laws. The Underlying Lawsuits are pending in St. Louis County and that is the locale of the landfills and the contaminated properties. The principles of comity favor the declaratory judgment action being adjudicated in the Missouri Case."

However, regardless of whether or not it was proper for the circuit court to include a discussion of applicable law in its comity analysis, or whether Missouri law will be applied to the policies, the circuit court provided sufficient other connections to Missouri to support its conclusion that the comity factor weighed in favor of staying this case. These connections included that the policies

were issued in Missouri, the underlying lawsuits are all pending in Missouri, and the landfill and contaminated properties are in Missouri.

¶ 21        B. Prevention of Multiplicity, Vexation, and Harassment

¶ 22        1. Multiplicity

¶ 23   Plaintiff argues the circuit court erred in concluding that, because Illinois did not have a substantial connection to this case while Missouri had "numerous and significant connections," the prevention of multiplicity weighed in favor of staying this action.

¶ 24   In analyzing this factor, the circuit court concluded that this case did not have a substantial connection to Illinois:

"The only connection to Illinois that Bridgeton gives is that [defendants are] headquartered here and that may help with the facilitation of witness and documents production. That does not rise to the level of a substantial connection, particularly when compared with the numerous and significant connections there are *** to St. Louis County. Also, despite being filed later, the Missouri Case has advanced farther than this case has, as the parties are already at issue in the Missouri Case. The continuation of this litigation could only contribute to multiplicity."

Plaintiff contends that this was error because there were other connections to Illinois, including that defendants issued the policies from their Chicago headquarters, hired a Chicago-based third-party administrator, Resolute, to conduct the claims handling for the underlying lawsuits, and that defendants made their coverage decisions from Chicago and thus Chicago was the location where defendants' alleged breach of contract occurred. However, all these connections presented are only different ways of saying the same broad point: that this litigation has a connection to Illinois

because defendants are headquartered here and made their coverage decisions regarding the policies from their Chicago headquarters. The circuit court found that this case's connection to Illinois was not sufficiently substantial, while there were "numerous and significant connections" to Missouri, such as that the policies were issued in Missouri, the landfill and contaminated properties are in Missouri, and the underlying lawsuits are all pending in Missouri.

¶ 25     Although plaintiff cites Illinois cases that have held that there was a substantial enough connection to Illinois based on similar facts, see, *e.g.*, *Whittmanhart,* 402 Ill. App. 3d at 854 ("Illinois has a legitimate and substantial relation to the underlying dispute" because plaintiff's principal place of business is in Illinois, the agreements contemplated performance in Illinois, and plaintiff alleged that a "substantial number of the events which led to the breach of the two contracts took place in Cook County, Illinois"), defendants have cited cases with similar facts that held that the connection with Illinois was not substantial enough, see, *e.g.*, *Continental Casualty Co. v. Radio Materials Corp.*, 366 Ill. App. 3d 345, 349 (2006) (no abuse of discretion for the circuit court to dismiss Illinois action even though the insurance policies were issued by Illinois-based insurers to an Illinois-based insured through an Illinois broker). The record supports the circuit court's conclusion that this case had substantial connections to Missouri, and that, because the Missouri action had advanced further than this case, this case should be stayed to avoid multiplicity. See *Skipper Marine Electronics*, 200 Ill. App. 3d at 697 ("We do not find that the relationship between the State of Illinois and the proceedings in the present case was so strong that the trial court's dismissal could be considered an abuse of discretion.").

¶ 26                              2. Vexation and Harassment

¶ 27    Plaintiff also argues that the circuit court erred when it held that the prevention of vexation and harassment weighed in favor of a stay.

¶ 28    Plaintiff contends that the Missouri action is vexatious and harassing because this action was filed first and then defendants waited until one day before they appeared in the instant proceedings to file the Missouri action. Plaintiff argues that, by intentionally filing a duplicate action in Missouri with full knowledge of plaintiff's pending complaint in Illinois, and then using that duplicative action to justify filing a section 2-619(a)(3) motion to dismiss against plaintiff, defendants were engaging in "legal harassment". Plaintiff acknowledges that it has filed a similar declaratory judgment action in Missouri against Travelers Insurance. However, it contends that it did not combine its claims against Travelers and defendants into a single Missouri lawsuit because "the Travelers case involves missing policies and related Missouri-based discovery from area brokers as the parties search for evidence of such policies," while in this case, the existence of the policies is not in dispute and no discovery from underwriters or brokers in Missouri is needed.

¶ 29    Conversely, defendants argue that it is plaintiff's Illinois lawsuit that is vexatious and harassing. Defendants contend that in 2020, after informing plaintiff that it was withdrawing from the defense of the underlying lawsuits, plaintiff thanked them for their "professionalism, good faith and courtesy." They contend that they only learned that plaintiff disputed defendants' coverage position two and a half years later when plaintiff "ambushed" defendants with this Illinois lawsuit. Defendants argue that plaintiff filed its complaint in Illinois in an attempt to have Illinois law apply to the dispute, which is why plaintiff did not include defendants as parties in its "virtually identical

suit" against Travelers in Missouri. The circuit court weighed both sides' arguments and found defendants' argument more convincing.

¶ 30    Finally, plaintiff argues that the circuit court erred in concluding that the vexation and harassment component favors staying this action because "[Missouri] is where most of the direct and potential witnesses are located and where the contaminated properties are located." Generally, the only relevant pieces of evidence necessary to decide an insurer's duty to defend are the insurance policies and the underlying pleadings. See *Pekin Insurance Co. v. Beu*, 376 Ill. App. 3d 294, 296 (2007); *American Family Mutual Insurance Co. v. Sharon*, 596 S.W.3d 135, 142 (Mo. Ct. App. 2020). Therefore, in a case such as this, where the policies at issue are not in dispute, whether defendants have a duty to defend plaintiff in the underlying lawsuits is a question of law that requires no witnesses. See *Yamada Corp. v. Yasuda Fire & Marine Insurance Co.*, 305 Ill. App. 3d 362, 369 (1999). Additionally, plaintiff's claim for indemnity for the *Kitchin* lawsuit is not yet ripe because no judgment has yet been issued in that case. *United Services Automobile Ass'n v. Dare*, 357 Ill. App. 3d 955, 960 (2005). Even if a dispute regarding *Kitchin* indemnity arises in the future, defendants provided no explanation concerning what relevant testimony Missouri witnesses would provide regarding this issue.[1]

¶ 31    However, the circuit court provided other reasons for its conclusion beyond the location of witnesses:

---

[1] Defendants attached an appendix containing a list of potential witnesses to their Reply in Further Support of their Motion to Dismiss Pursuant to Illinois Supreme Court Rule 187 and the Doctrine of *Forum Non Conveniens*. However, of the 16 potential witnesses listed, some are deceased, and some are the plaintiffs of the underlying lawsuits (of which the *Dailey* and *Banks* plaintiffs can provide no relevant testimony because plaintiff is no longer seeking indemnification for those lawsuits). The appendix provides no explanation as to what testimony these witnesses could potentially provide.

"Bridgeton's argument that [defendants are] to blame for creating vexatious and harassing litigation falls on deaf ears. Bridgeton filed a similar declaratory judgment action against Traveler's Insurance in Missouri, but for some unexplained reason, Bridgeton chose to file against [defendants] in Illinois. Also, Bridgeton does not argue that it would be prejudiced or burdened in any way by litigating in Missouri. In fact, it has a counterclaim in the Missouri Case."

The circuit court acted within its discretion in concluding that the vexation and harassment component of the second *Kellerman* factor favored staying this case.

¶ 32                    C. Likelihood of Obtaining Complete Relief in Missouri

¶ 33    Plaintiff argues that the circuit court erred when it concluded that the third *Kellerman* factor, the likelihood of obtaining complete relief in the foreign jurisdiction, weighed in favor of staying this action. Plaintiff contends that the circuit court erred because the reasons it gave in support of its conclusion, that defendants had "obtained stipulations from [the underlying plaintiffs] agreeing to be bound by the decisions in the Missouri Case" and that "the Missouri Case could be consolidated with the Travelers case allowing [defendants] to pursue claims of contribution against Travelers," are irrelevant. However, regardless of the specific reasons provided by the circuit court, plaintiff would be able to obtain complete relief in Missouri, which weighs in favor of granting a stay of this case. See, *e.g.*, *Rodgers v. Cook County*, 2013 IL App (1st) 123460, ¶ 37 (third *Kellerman* factor "weighs heavily" in favor of not dismissing the case where plaintiff would not be able to obtain complete relief in foreign jurisdiction).

¶ 34    D. *Res Judicata* Effect of a Foreign Judgment in the Local Forum

¶ 35    Plaintiff argues that the circuit court erred when it concluded that "[t]he *res judicata* effect is a non-issue" because "[n]either side is arguing that judgment in Missouri would not be recognized in Illinois or vice-versa." The doctrine of *res judicata* only bars a subsequent action "if the successful prosecution of the action would in effect nullify the judgment entered in the prior litigation." *Whittmanhart,* 402 Ill. App. 3d at 856.

¶ 36    In *Kellerman*, the Illinois Supreme Court held that the *res judicata* effect of the foreign judgment in the local forum weighed against a stay because the Illinois action included claims that were not present in the federal action, and thus the *res judicata* effect of any judgment in the federal action would prejudice the plaintiff by preventing the additional claims from being heard. *Kellerman*, 112 Ill. 2d at 448. Here, this case and the Missouri action are almost identical, and involve the same parties. Neither case is more comprehensive than the other. Plaintiff would not be prejudiced, because any judgment in the Missouri action would be recognized in Illinois.

_____

¶ 37    The circuit court weighed comity, the prevention of multiplicity, vexation, and harassment, the likelihood of obtaining complete relief in Missouri, and *res judicata*. Its conclusions on these points were supported by the record. Against this backdrop, the circuit court did not act "arbitrarily without the employment of conscientious judgment." *Katten*, 375 Ill. App. 3d at 67; *United States v. Williams*, 81 F.3d 1434, 1437 (7th Cir. 1995) (Posner, J.) ("If the judge can decide either way because he is within the zone in which he has discretion *** this implies that two judges faced with the identical record could come to opposite conclusions yet both be affirmed.").

¶ 38                                          III. CONCLUSION

¶ 39     The judgment of the circuit court of Cook County is affirmed.

¶ 40     Affirmed.